## THE STATE OF KANSAS v. C. H. ESTABROOK, et al.

DRUGGISTS' BOND, *Breach of; Measure of Recovery.* The amount of recovery for the breach of a druggists' bond, given under ≀ 2 of the prohibition act of 1881, is the amount which the state loses by reason of the breach of such bond, and is not necessarily the full amount of the penalty of the bond. This amount of recovery would generally include the amount of the costs and expenses necessarily incurred in the prosecution of the druggist for his violation of the law, together with the costs and expenses necessarily incurred in enforcing the judgment, whether the judgment should be for a fine or for imprisonment, and also the fine itself, if that should be imposed upon the druggist. Therefore, where a druggist sells intoxicating liquor in violation of the prohibition act, and thereby commits a breach of his bond, and he is prosecuted criminally for the violation of such act, and a fine and costs are imposed upon him, but no judgment is rendered subjecting him to any imprisonment, and he immediately pays the amount of the fine and costs, *held,* that no action will afterward lie against the druggist and his sureties for such breach of his bond; and this for the reason that the full amount of the loss to the state incurred by reason of the breach of the bond has been fully paid and satisfied.

### *Error from Franklin District Court.*

ACTION upon a bond executed under § 2 of the prohibition act of 1881. At the May Term, 1882, of the district court,

judgment for the defendants *Estabrook* and two others, and against *The State*, which brings the case here. The opinion states the facts.

*W. Littlefield,* county attorney, for The State.
*Mason & Meigs,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the name of the state of. Kansas, by the county attorney of Franklin county, against C. H. Estabrook, A. R. Hamilton and Mary S. Estabrook, upon a penal bond executed by the defendants under § 2 of the prohibition act of 1881. The bond reads as follows:

"Know all men by these presents, that we, C. H. Estabrook as principal, A. R. Hamilton and Mary S. Estabrook as sureties, are held and firmly bound unto the state of Kansas in the sum of one thousand dollars, to the payment of which sum, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors, administrators and assigns, firmly by these presents. Sealed with our seals, and dated this 21st day of June, 1881.

"The condition of this obligation is such, that whereas the said C. H. Estabrook has presented a petition to the probate judge of Franklin county, Kansas, praying that a permit be granted him to sell intoxicating liquors for medical, scientific, and mechanical purposes only, in the city of Ottawa, county of Franklin, state of Kansas: now if the said C. H. Estabrook shall neither use, sell, barter nor give away any of the liquors mentioned in section one of an act of the legislature of the state of Kansas entitled 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes,' approved February 19, 1881, in violation of any of the provisions of said act, then this obligation to be null and void, else in full force and effect.

C. H. ESTABROOK.        [Seal.]
A. R. HAMILTON.         [Seal.]
MARY S. ESTABROOK.      [Seal.]"

That portion of the plaintiff's petition which alleges the

breach of the bond, and which prays for relief, reads as follows:

"4. That on the 8th day of February, 1882, the said C. H. Estabrook was arrested and brought before William H. Clark, a justice of the peace of the city of Ottawa, in said Franklin county, in a certain criminal action therein, entitled The State of Kansas v. C. H. Estabrook, upon the complaint in writing of W. Littlefield, county attorney of said Franklin county, charging that the said C. H. Estabrook, on the — day January, 1882, at the county of Franklin, state of Kansas, in a certain two-story building, known as 'Estabrook's drug store,' situated upon lot No. 34, in block No. 58, in the city of Ottawa, being then and there a druggist, and having a permit to sell intoxicating liquors for medical, scientific and mechanical purposes only, did directly and indirectly sell and barter spirituous, malt, vinous, fermented, and other intoxicating liquors, in manner other than that provided by law, and for purposes other than medical, or scientific, or mechanical, and without any authority of law.

"5. That the said C. H. Estabrook, on the 13th day of February, 1882, at one o'clock P. M., (the day and hour to which said criminal action had been postponed,) did then and there in said justice court personally appear, and having been duly arraigned and said criminal charge having been distinctly read to him, did then and there plead guilty thereto, which said plea was by said justice duly entered in his docket; whereupon he, said C. H. Estabrook, was then and there by said court adjudged to pay a fine to the state of Kansas, of $100 and the costs of the prosecution, taxed at $18.50, which said fine and costs were then and there paid by said C. H. Estabrook; and it was then and there by said justice's court further ordered and adjudged that the said druggists' permit, granted as aforesaid to the said C. H. Estabrook, be and stand forfeited to the state of Kansas, and the same was by the judgment of said court then and there declared null and void from that date.

"And it was then there further ordered and adjudged by said justice's court that the bond above mentioned be forfeited to the state of Kansas, and the moneys in said bond mentioned were thereby declared and held to accrue to and belong to the state of Kansas.

"Wherefore, the said plaintiff prays judgment against said defendants for the said sum of $1,000, and the costs of this action."

The defendants demurred to the plaintiff's petition, upon the ground that it did not state facts sufficient to constitute a cause of action, and the court below sustained the demurrer; to which ruling the plaintiff, by its attorney, excepted. The state, by the county attorney, now brings the case to this court, and alleges that the court below erred in sustaining said demurrer.

The statutes necessary to be considered in deciding this case are as follows: Section 2 of the prohibition act of 1881 provides, among other things, that—

"He [the applicant for a druggists' permit to sell intoxicating liquors] shall also file with such petition a good and sufficient bond to the state of Kansas, in the sum of twenty-five hundred dollars, conditioned that such applicant will neither use, sell, barter, nor give away any of the liquors mentioned in section 1 of this act, in violation of any of the provisions of this act; and on such violation, said bond shall thereby become forfeited. Such bond must be signed by the applicant, and by at least two of the persons signing such petition as sureties, and such sureties must jointly or severally justify, in writing, under oath, in the sum of five thousand dollars over and above all their debts, legal exemptions and liabilities: *Provided*, That in cities, towns, and places of less than five thousand population, said bond may be in the sum of one thousand dollars, and the sureties shall justify, as provided above, in the sum of two thousand dollars."

Section 9 of said act provides that every person having a permit to sell intoxicating liquors, or to manufacture the same, who shall violate the act, shall be punished by fine or imprisonment in the county jail, and shall forfeit his permit; and further provides as follows:

"In all cases where forfeitures are provided in this act, the court, in rendering judgment in the action, shall declare such forfeiture in fixing the punishment."

And § 12 of said act provides, among other things, as follows:

"The county attorney shall bring suit upon all bonds forfeited under the provisions of this act, immediately upon the happening of such forfeiture, to recover the penalty thereof; and all moneys collected thereon shall be paid into the school

fund of the proper county. The county attorney shall be allowed a fee of ten per cent. upon all moneys so collected by him, to be paid out of the same."

Counsel for defendants also refer us to § 12 of the bill of rights of the constitution of Kansas, which reads as follows:

"No person shall be transported from the state for any offense committed within the same, and no conviction in the state shall work a corruption of blood or forfeiture of estate."

Counsel for defendants claim that if the penalty of the bond was strictly and literally enforced, it would work a "forfeiture of estate," contrary to the above provsion of the constitution. With the view, however, that we have taken of this case, it will not be necessary for us at this time to construe this provision of the constitution. We have already had occasion, in the case of *The State v. Pierce,* 26 Kas. 777, to consider the nature and character of a druggists' bond, given under § 2 of the prohibition act of 1881, and in that case we held that the bond is "a civil contract, like other official bonds or *quasi* official bonds of those holding public offices or discharging public duties;" and that it is to be construed like other bonds of that character, and governed by the same principles of law. It is certainly not in form or in substance like a criminal recognizance; for a criminal recognizance is not only a contract like a druggists' bond, but it is *more* than a contract — it is an obligation *of record in a criminal action,* and the acknowledgment of a *preëxisting debt,* which cannot be claimed for a druggists' bond, or for any mere penal bond. With reference to the form and character of recognizances, see *The State v. Weatherwax,* 12 Kas. 463, and *Gay v. The State,* 7 Kas. 394. Neither can the penalty of a druggists' bond be considered as liquidated damages. Indeed, the bond must be considered just as other penal bonds are, and the penalty of the bond must be considered just the same as the penalty of all other penal bonds. It cannot be considered as a preëxisting debt, as the amount stated in a recognizance is, nor as liquidated damages, as the amount stated in some contracts is. In the case of

*The State v. Pierce,* supra, it was held that as soon as the druggist violates any of the provisions of the prohibition act of 1881, he forfeits his bond, and an action immediately accrues thereon against him and his sureties; but what the damages would be, or what the proper amount of recovery would be, or what evidence would be necessary to sustain the action, was not decided. That it would not necessarily be the full amount of the penalty, we think is certain; for such would be contrary to all the decisions in England and America on penal bonds at the present day. It is true, that at common law, in an action of debt on a penal bond the judgment would be rendered for the full amount of the penalty; but the judgment would at the same time be rendered with an order that execution should issue only for the amount of the damages actually proved to have been sustained by reason of the breach of the bond. Such a rule is still followed in some of the states; so that while the judgment in such a case is technically rendered for the full amount of the penalty, it is practically rendered for only the loss by the obligee sustained by reason of the breach of the bond. In the most of the states the judgment is rendered in form as well as in fact, for only the loss sustained by the obligee by reason of the breach of the bond; and this, we think, is the proper rule and the proper practice in this state and for this case. When a druggist violates his bond, the proper damage, we suppose, would be just the loss sustained by the state by reason of such breach; and as the law makes the acts which constitute a breach of the bond a criminal offense, and subjects the druggist to fine or imprisonment, we suppose the loss to the state would be just the amount of the costs and expenses necessarily incurred in the prosecution of the druggist for his violation of the law, together with the costs and expenses necessarily incurred in enforcing the judgment, whether the judgment be for a fine or for imprisonment, and also the fine itself, if that should be imposed upon the druggist. Possibly there might be other losses to the state, but we cannot now think of any others. The

druggist in the present case was prosecuted and a fine and costs were imposed upon him, but no judgment was rendered subjecting him to any imprisonment; and these costs and this fine the druggist immediately paid. Therefore we suppose that the loss to the state in the present case, by reason of the breach of the druggists' bond, was just the amount of said fine and costs; but these the druggist has paid as aforesaid; hence it would seem that the state could not after such payment maintain any action upon the druggists' bond — no action for even nominal damages — for the damages arising upon the breach of the bond have been ascertained by a legal adjudication by a proper judicial determination, and have been paid. In some cases where a breach of an obligation is shown, but no actual damages are either pleaded or proved, nominal damages will be presumed and allowed; but, as before stated, there is no room in this case for allowing nominal damages, for actual damages have already been ascertained, paid and satisfied. The court in the case of the *State v. Pierce*, supra, seems to class this kind of bonds with official bonds or *quasi* official bonds: now suppose that the state treasurer should carelessly cause a loss to the state in the sum of fifty dollars, could the state recover from him and his sureties on his official bond the sum of a million dollars? Or suppose that the county attorney should carelessly cause a loss to the state or to the public in the sum of ten cents, could the state recover from him or his sureties on his official bond a sum not less than one thousand dollars? Official bonds, however, are governed in this respect by the same rules of law which govern other penal bonds. And in all classes of penal bonds, the obligee thereof may recover from the obligor for a breach thereof, just the amount of his loss, and no more. Not perceiving any good reason why a druggists' bond in cases of this kind should be governed by rules of law different from those governing other penal bonds, we think the judgment of the court below should be affirmed.

All the Justices concurring.