UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court, D. Maryland. January 29, 1907.)

1. UNITED STATES—BONDS GIVEN BY CONTRACTORS—CONSTRUCTION.

An express provision by Congress as to the construction and effect to be given to bonds executed to the United States cannot be defeated by the courts upon considerations applicable to agreements improvidently made between individuals, nor by the practice of department officials, through mistake or otherwise, to give such bonds a different construction.

2. POST OFFICE—BONDS OF BIDDERS FOR MAIL-CARRYING CONTRACTS—DAMAGES FOR BREACH.

The surety on the bond of a bidder for a contract for carrying the mails on default by the principal is liable for the full sum mentioned as the penalty of the bond without regard to the actual damages sustained by the United States, where the bond, although in the usual form, recites that it is given pursuant to Act June 23, 1874, 18 Stat. 235, c. 456. § 245 [U. S. Comp. St. 1901, p. 2695] and "subject to all the terms, conditions, and remedies thereon in said act provided"; one of its provisions being that in case of default by a bidder "he and his sureties shall be

liable for the amount of said bond as liquidated damages to be recovered in an action of debt on said bond."

At Law. Action on bond given by an accepted bidder for carrying the mails. Tried by agreement before the court without a jury.

MORRIS, District Judge. The controversy in this case is whether the surety now sued is liable for the whole sum for which it became bound, or only for the actual money damage which the United States suffered by reason of the failure of the principals to perform their contract. The sum for which the defendant as surety became bound was $3,000. The amount paid out by the United States as the excess in cost by reason of the failure of the bidder to perform his contract was $2,010, not including any expense for telegrams, stationary, and clerk hire, which it is agreed may be estimated at not exceeding $10.

The facts being agreed upon there is only the question of law as to whether the $3,000 for which the surety became bound is to be regarded as a penalty or as a liquidated sum which may be exacted by the United States upon a breach without reference to the actual damage suffered by the nonperformance. The bond is as follows:

"Know all men by these presents 'that John Morgan and sons of Ukiah, in the state of California, principal, and the United States Fidelity & Guaranty Company, a corporation of Baltimore, Md., as sureties are held and firmly bound unto the United States of America in the just and full sum of $3,000, lawful money of the United States, to be paid to the said United States of America, or to its duly appointed or authorized officer or officers, to the payment of which well and truly to be made and done, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents. Whereas, by an act of Congress, approved June 23, 1874, entitled 'An act making appropriations for the service of the Post Office Department for the fiscal year ending June 30, 1875, and for other purposes,' it is provided, 'that every proposal for carrying the mail shall be accompanied by the bond of the bidder with sureties approved by a postmaster,' in pursuance whereof and in compliance with the provisions of said law this bond is made and executed subject to all the terms, conditions, and remedies thereon in said act provided and prescribed, to accompany the aforegoing and annexed proposal of the said John Morgan and sons, bidder: Now, the condition of the said obligation is such, that if the said bidder, as aforesaid, shall within such time after his bid is accepted as the Postmaster General has prescribed in said advertisement, to wit, within 60 days from the date of acceptance of the bid enter into a contract with the United States of America, with good and sufficient sureties to be approved by the Postmaster General to perform the service proposed in his said bid, and further shall perform said service according to his contract, then this obligation shall be void, otherwise to be in full force and obligation in law."

It thus appears that the bond, although in the customary form, under which there would be no question that the amount recoverable for a breach would be the actual money damage suffered by the United States, recites that the bond is made and executed in compliance with the provisions of the act of Congress approved June 23, 1874, and that the bond is made and executed, subject to all the terms, conditions, and remedies thereon in the said act provided and prescribed. It is conceded that these recitals have the effect of reading into the bond the provision of the said act of Congress, which is as follows:

"Section 245. That every proposal for carrying the mail shall be accompanied by the bond of the bidder with sureties approved by a postmaster in a sum to be designated by the Postmaster General in the advertisement of each route; to which bond a condition shall be annexed, that if the said bidder, shall within such time after his bid is accepted as the Postmaster General shall prescribe, enter into a contract with the United States of America, with good and sufficient sureties, to be approved by the Postmaster General, to perform the service proposed in the said bid and further that he shall perform the said service according to his contract, then the said obligation to be void, otherwise to be in full force and obligation in law; and in case of failure of any bidder to enter into such contract to perform the service, or, having executed a contract, in case of failure to perform the service according to his contract, he and his sureties shall be liable for the amount of said bond as liquidated damages, to be recovered in an action of debt on said bond." Act June 23, 1874, c. 456, 18 Stat. 235 [U. S. Comp. St. 1901, p. 2695].

This section being imported into the bond it results that under this law enacted by Congress the bond is to be read as if it in so many words provided that upon default the bidder and his sureties should be liable for the amount of the bond as liquidated damages. The meaning of the words "liquidated damages" is of well-understood and recognized significance. These words are used in reference to the breach of a contract or the nonperformance of a duty as expressing a fixed sum which is agreed upon between the parties as the ascertained damage which the one is to receive and the other to pay because of the default. It is quite true that when the obligation is expressed in the customary form of a bond, the amount recoverable is the damage actually sustained. But as the words "liquidated damages" have a well-known meaning and are used to distinguish a specific sum agreed upon by the parties to be paid in case of default from a penal sum construed as intended only to secure the actual damage, it cannot be justly said that the words "liquidated damages" were used by Congress without intending what the words import.

It cannot be maintained that the clear legislative will is not to be obeyed, and that what is prescribed by an act of Congress is to be overridden by the courts. It is within the legislative power to say that a deed to A. shall convey to him only a life estate, or that it shall be equivalent to a deed to him, his heirs, and assigns and convey a fee-simple estate without words of inheritance; and so it is within the power of Congress to enact that in a bond in usual form given to the United States by a contractor for carrying the mail the sum mentioned as the penalty of the bond shall be recoverable upon a breach of the bond as liquidated damages, that is to say, as a fixed, agreed sum to be paid without regard to the actual damage, for that is the meaning of "liquidated damages."

It is strongly argued on behalf of the defendant that the use of the words "liquidated damages" is not in ordinary cases conclusive but that the courts will, notwithstanding the use of these words, construe the obligation otherwise if satisfied from the whole transaction that the intention of the parties was to secure compensation in a case where compensation could be reasonably ascertained. In such cases the courts have refused to give force to the language used because they held that the language used was not applicable to the transaction; not because there was any doubt as to its meaning, but because the

courts held that a contrary intention was derivable from other elements of the transaction to which the agreement related. And as the courts are always reluctant to enforce a forfeiture they have held that, notwithstanding the use of the words "liquidated damages," the parties to the agreement did not mean what they said when other parts of their agreement were not consistent with that meaning. But this rule of construction can have, in my opinion, no application to an act of Congress. It is obvious that Congress has the power to enact that for a breach of a contract with the United States the party in default shall forfeit and pay a fixed sum as liquidated damages, and when it has so enacted it is not open to say that the transaction is not one in which liquidated damages were within the intention of the parties. It being within the power of the legislative body to enact what the rule of law shall be with respect to bonds to the United States, when it has prescribed the rule its will is not to be defeated by considerations applicable to agreements improvidently made between individuals, for that would be in contravention of legislative will. Clark v. Barnard, 108 U. S. 436-457, 458, 2 Sup. Ct. 878, 27 L. Ed. 780; U. S. v. Dieckerhoff, 202 U. S. 302-313, 26 Sup. Ct. 604, 50 L. Ed. 1041.

Evidence was introduced by the defendant, subject to exception, to show that ever since the enactment of the law of June 23, 1874, up to the date of the bond now in suit, now more than a quarter of a century, it had been the invariable practice of the officials of the Post Office Department in dealing with the sureties on such bonds to accept in settlement of the surety's liability the actual damage as full compensation. This was no doubt a wise and just dealing with sureties, and it may have had the effect of leading the surety on this bond to expect that it would be so dealt with; but the course of dealing by officials of the government, however fair and reasonable, cannot work a change in the clear meaning of an act of Congress. Even a settlement made by officers of the government under a misapprehension of the law is not binding, as the government is not bound by the mistakes of its officers, whether of law or fact. McElrath v. U. S., 102 U. S. 426–441, 26 L. Ed. 189; U. S. v. Burchard, 125 U. S. 176–180, 8 Sup. Ct. 832, 31 L. Ed. 662; Wisconsin Central R. R. v. U. S., 164 U. S. 190–207, 17 Sup. Ct. 45, 41 L. Ed. 399.

Verdict and judgment will be entered in favor of the United States for the amount of the bond.