## STATE v. VENDING MACHINE CORPORATION et al.

No. 22119.    Nov. 19, 1935.

Ernest F. Jenkins, County Attorney, for plaintiff in error.

Monnet & Savage and Wilcox & Swank, for defendants in error.

WELCH, J. This is an appeal from the county court of Payne county. The parties here occupy the same relative position which they occupied in the trial court, and will be referred to as plaintiff and defendants.

The action was instituted by the county attorney of Payne county for the purpose of recovering a judgment against the defendant Vending Machine Corporation of America, a corporation, and Hartford Accident & Indemnity Company, a corporation, based upon an alleged breach of the conditions of a bond given by the Vending Machine Corporation of America, a corporation, as principal, with the Hartford Accident & Indemnity Company, a corporation, as surety, under the provisions of section 1952, O. S. 1931, in the principal sum of $1,000, conditioned upon the faithful compliance with the provisions of section 1947, O. S. 1931, on the part of the principal. The bond was required by the statutes to be given by vendors of cigarettes, and is conditioned upon compliance with the law which makes it illegal to furnish to any minor by gift, sale, or otherwise any cigarettes or cigarette papers. The cause was dismissed as to the defendants, except those hereinabove named. Upon trial the court sustained the defendants' demurrer to plaintiff's evidence, and rendered judgment accordingly. The appeal presents questions of alleged errors of the court in sustaining the demurrer to the evidence.

The evidence discloses that the defendant Vending Machine Corporation of America was engaged in the retail sale of cigarettes by means of a mechanical vending machine so constructed that upon depositing coins in the machine and pulling a lever there would be released to the operator a package of cigarettes. Said defendant had procured a license in Payne county as provided in section 1952, O. S. 1931, and had executed the bond in the principal sum of $1,000, as provided therein, and conditioned in accordance with the statutes, with the surety company defendant as surety thereon. The bond was in full force and effect at the time of the transaction herein discussed, and plaintiff sought judgment for the full amount thereof. One of the machines belonging to the first-named defendant was located in the place of business of Jake Moore, a former defendant in the case, in the town of Yale. The evidence further shows that the county attorney of Payne county had received numerous complaints that the owners, operators, and keepers of cigarette vending machines were dispensing cigarettes to minors in various parts of the county, and sent his assistant, with other persons, to the town of Yale to investigate such complaints. One of the persons employed in this investigation was a small boy 14 years of age. The investigating party parked their automobile at the front entrance of the place of business of the said Jake Moore, in view of the vending machine owned by the first-named defendant. The minor entered the place of business alone, and was immediately followed therein by a lady who appeared to be in charge of the establishment at the time, and under her instructions and with her assistance the boy deposited coins in the machine and upon operation of the lever as directed, secured therefrom a package of cigarettes. Upon inquiry by the lady the boy answered that his folks did not object to his smoking cigarettes.

It appears from plaintiff's brief that the defendants, in the trial court in support of their argument, on demurrer urged that the plaintiff obtained its evidence by entrapment, and, therefore, would not be permitted to use the same in a trial of this nature. The plaintiff argues this question

in its brief in anticipation of the argument being urged on appeal by the defendants. We observe that the question is not urged by the defendants in their brief, and the same, if ever a proper question under the issues here, will be considered as abandoned, and will not be here considered.

Plaintiff's brief, although divided into several parts, is directed generally to the alleged error of the court in sustaining the defendants' demurrer to plaintiff's evidence. It contends that the evidence and the inferences to be reasonably drawn therefrom made out a prima facie case against the defendants.

The defendants in their brief, and in support of the action of the trial court, urge the following propositions:

"(1) The amount recoverable on said bond is limited to the actual damages suffered by the state, and plaintiff failed to allege and prove damages.

"(2) The evidence disclosed that the cigarettes were sold to Henry W. Hoel, an adult.

"(3) Plaintiff failed to prove that the party who sold the cigarettes was an agent of the defendant Vending Machine Corporation of America."

Our examination of the record convinces us that the trial court erred, unless its action is supported by one or more of the propositions of law urged by the defendants, and we will therefore consider the questions of law in the order above named.

In considering the question whether the amount recoverable on the bond is limited to the actual damage suffered by the state, and whether the state must prove damages in order to recover, we first examine the statutory provisions providing for the bond and prescribing the conditions thereof. Section 1977, C. O. S. 1921, which was in force at the time of the transaction here involved, provided as follows:

"It shall be the duty of the county clerk, upon the application of any responsible person, to issue annual license to such person for the sale of cigarettes and cigarette papers for each place of business in such county upon the payment of a license fee of twenty-five dollars and the execution of a good and sufficient bond in the sum of one thousand dollars with a surety company as surety, or two or more individual sureties, one of whom shall be a resident of the county, to be approved by the county clerk, conditioned for the faithful compliance with the provisions of section 1 of this act. All license fees provided for herein shall go into the county

road fund and be used in the construction and maintenance of public roads."

These provisions of law now appear as a part of section 1952, supra.

This law was passed in 1917, and section 1 of the act, which is referred to, is to be found as section 1, chapter 148, S. L. 1917, and appears now as section 1947, O. S. 1931; it provides as follows:

"Any person who shall furnish to any minor by gift, sale or otherwise, any cigarettes or cigarette papers, shall be guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine of not less than twenty-five dollars nor more than two hundred dollars and be confined in the county jail not less than ten days nor more than ninety days for each offense."

In connection with the statutory provisions the defendants say:

"We call attention to the fact that the above statute prescribes that the maximum fine for one offense of selling cigarettes to a minor shall be two hundred dollars. If the bond of the defendants involved in this action is subject to forfeiture and the entire amount thereof due and payable to the state, it is apparent that the defendant would not only be subject to payment of a fine of two hundred dollars for one offense of selling cigarettes to a minor, but in addition, would be penalized the sum of one thousand dollars, or a total of twelve hundred dollars for such offense. It is our contention that a fair and reasonable construction of sections 1973 and 1977 is that it was not the intention of the Legislature to impose such an extreme and excessive penalty for one offense of selling cigarettes to a minor. We submit that the bond required by law is the state's security and its guarantee that any fine imposed upon conviction of a violation of said section 1973, and the costs of prosecution thereunder will be paid by the party convicted. If the principal obligor has been convicted of selling cigarettes to a minor and has paid the fine imposed, together with the costs of prosecution, there is no obligation whatever on the bond. If the fine imposed and the costs of prosecution are not paid, then an action will lie against the obligor on the bond for such damages as may have been suffered by the state, and it has been held that the measure of damages is the fine imposed and cost of prosecution."

And after quoting from a number of authorities, they end their argument on the point with the following summary:

"We submit that the great weight of authority supports the proposition herein contended for, that the plaintiff is limited in its recovery on the bond in controversy, to the

actual damages which must be alleged and proved, as shown by the cases herein cited, and that in view of the fact that this plaintiff did not allege damages or prove any damages, and further in view of the fact that no damages had been sustained by the· state for the reason that the defendant Vending Machine Corporation of America has not even to this date been convicted of a violation of said section 1973, the court below properly sustained the defendants' demurrer to the evidence of the plaintiff."

The principal authority relied upon in support of their argument on the point is the case of State of Kansas v. Estabrook et al., 29 Kan. 739. Therein the Supreme Court of Kansas, in considering the extent of the recovery on a bond executed by a liquor dealer, apparently held substantially in accordance with the defendants' contention. We have carefully considered the cited case and do not agree that the same is in accord with the weight of authority on the question, but, on the contrary, and after a rather extensive research, we are rather of the opinion that the case as written either does not reflect the entire state of facts, the condition of the bond, and the provisions of the statute under which it was executed, or that the case stands in a field almost entirely by itself, and is against practically every authority on the question which has come to our attention.

The defendant also cites O'Kane v. Lederer, 4 Fed. (2d) 418 as supporting their views. Our examination of that case leads us to the conclusion that it supports the contrary view of the law as applied to bonds such as we have here under consideration. The O'Kane Case, supra, in the first syllabus thereof lays down the general rule which we consider applicable here. We quote the same as follows:

"Generally, where statute requires execution of bond for fixed penalty, conditioned on compliance with law, penalty named in bond is measure of damages for its breach or is punishment inflicted for violation of pledge to observe laws, unless statute or bond, read in light of statute, indicates a less or different measure."

It is true that the court in that case held that the bond therein involved did not come within the general rule, and that the face of the bond was not a fixed penalty. This holding appears to have been based largely upon the fact that the bond there provided, among other things, that it should insure payment of any taxes and penalties imposed. The condition of the bond, and the law under

which it was given, indicates that the bond was not given as a fixed penalty for the face amount thereof. It is interesting and enlightening to observe that court's discussion, wherein it says:

"It will be noted that, although the statute provides simply for a bond to insure compliance with the terms of the permit and the provisions of title 2 of the National Prohibition Act, the regulation goes further and provides, in addition, that the bond shall insure the payment of 'any taxes and penalties which may be imposed under the internal revenue laws.'

" * * * The construction and effect that should be given to bonds required by statute, and conditioned upon a compliance with the laws of a state or of the United States, have been frequently before the courts, and have usually presented questions of some difficulty. Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed., 780; U. S. v. Alcorn (C. C.) 145 F. 995; U. S. v. Oteri, 67 F. 146. 14 C. C. A. 344; U. S. v. U. S. Fidelity & Guaranty Co. (C. C.) 151 F. 534; U. S. v. Montell, 26 F. Cas. No. 15,798; U. S. v. Dieckerhoff, 202 U. S. 302, 26 S. Ct. 604, 50 L. Ed. 1041; State v. Larson, 83 Minn.. 124, 86 N. W. 3, 54 L. R.. A. 487; State v. Estabrook, 29 Kan. 739; U. S. v. Cutajar (D. C.) 59 F. 1000: also, 32 Opinions of Attorneys General, 365. Generally speaking, where a statute requires the execution of a bond to a state or, to the United States for a fixed penalty, conditioned upon a compliance with certain laws of a state or of the United States, the penalty named in the bond is the measure of damages for its breach, or rather is a punishment inflicted by the sovereign for the violation of a pledge to observe its law, unless the statute or the bond, read in the light of the statute, indicates a less or a different measure. The question is always one of construction, having regard to the entire statute, the governmental regulations framed to carry out the statute, and the language of the bond.

"If the regulations and the language of the bond had followed the provision of the statute, I am inclined to think that the government could recover the penal sum named in the bond, and that the counterclaim would therefore be properly pleaded although there is some force in the argument that, since the National Prohibition Act is a criminal statute. providing fines or imprisonment, or both, for violations of its terms, the provision as to bonds contained in section 6, was not intended as an additional punishment, but simply as a protection to the government for moneys due from the permittee. Be that as it may, and without considering what forms and amounts of bonds might be required by the Commissioner in the exercise of the power delegated to him, it is evident that the particular bond now before the

court, read in connection with the regulation under which it was executed, does not name $2,000 solely as a penalty or punishment for a noncompliance with the terms of the permit and title 2 of the act.

"The amount named is expressly stated to cover also any taxes and penalties imposed under the internal revenue laws and to insure compliance also with all the laws thereafter enacted, and regulations issued pursuant thereto, respecting the sale and use of wines and spirits for other than beverage purposes. It follows that the $2,000 named in the bond cannot all have been intended as a fixed penalty or punishment for a violation of the permit and title 2 of the Prohibition Act. I cannot but conclude, therefore, that the amount named in the bond represents a limit, and not a measure, of liability."

The defendants also cite the case of United States v. United States Fidelity & Guaranty Co., 1 Fed. (2d) 335. An examination of that case will disclose the same distinction as we find in the O'Kane Case, supra.

We find an exhaustive and learned discussion of the question in the case of United States v. Engelberg et al., 2 Fed. (2d) 720. We consider the correct rule aptly stated in the first and second syllabus thereof, which we quote as follows:

"1. United States can recover on bond conditioned on principal's compliance with the laws and regulations relating to sale of liquor executed on issuance of permit to principal by federal prohibition commissioner, without regard to damage actually sustained; the forfeiture in such case being imposed by statute.

"2. Generally, where a bond is given as an indemnity between private persons, the sum fixed will usually be regarded as a penalty, which limits the amount of recovery for the damage actually sustained, unless the amount named is clearly intended as stipulated or liquidated damages; but such rule does not apply, where penalty or forfeiture is imposed by statute upon the doing or omission of certain acts, nor where bonds are given to state."

The bond in the case there considered was not designed to secure any obligation of taxes, penalties, etc., as were the bonds in the two cases discussed immediately heretofore. The condition of the bond in the Engelberg Case, supra, is stated as follows:

"Now, therefore, the condition of this obligation is such that if the said principal shall fully and faithfully comply with all the requirements of the laws of the United States now or hereafter enacted, and regulations issued pursuant thereto, respecting the sale or use of distilled spirits and wines for other than beverage purposes, then this obligation to be void; otherwise, to remain in full force and virtue."

The condition of the bond which we have under consideration in the case at bar is found in the following language contained therein:

"The condition of the foregoing obligation is such that

"Whereas, under the provisions of House Bill 3 of the session of the Legislature of 1917, being entitled 'An act amending sale of Cigarettes, and the sale thereof to minors, and others' etc., approved March 31, 1917, and retail dealer in cigarettes and cigarette papers, before opening up or operating a place for conducting such business, shall, in addition to the other legal requirements, execute a good and sufficient bond in the sum of one thousand dollars to be approved by the county clerk, conditioned for the faithful compliance with the provisions of section 1 of said act; and

"Whereas, the above bounden principal has applied to the county clerk of Payne county, for a license to sell at retail, cigarettes and cigarette papers at their place of business in M. W. A. Cafe 118 So. Main in the city of Yale, said county and state; and

"Whereas, said license has been granted by said county clerk for a period of one year beginning on the 18th day of July, 1929, to be issued and delivered on the approval of said bond. The bond shall be in effect for one year from date of said license but may be renewed from year to year by continuation certificates executed by duly authorized officers or attorneys of the surety,

"Now, therefore, the conditions of the above obligation are such that if none of the provisions of section 1, said act shall be violated by the above bounden principal, within the life of said license, this obligation shall become null and void, otherwise, it shall remain in full force and effect."

It is to be observed that the condition of the bond in the Engelberg Case, supra, and in the instant case both contemplate only the compliance with the law. Neither bond was designed to insure the payment of any taxes, penalties, or damages. Much the same contentions were made in the Engelberg Case as are made here. The court therein said:

"It is averred that between the 24th day of January, 1920, and the 17th of August, 1921, the defendant Engelberg wholly failed to comply with the requirements of the laws of the United States and regulations issued pursuant thereto, respecting the sale of distilled spirits for other than beverage pur-

poses, and violated the requirements of the laws and regulations, in that he failed and neglected to keep records of the purchase, receipt, and sale of distilled spirits as required by the laws and regulations, and that he had and possessed whisky on his premises of which no record appears upon the books required to be kept, and that he unlawfully sold whisky for beverage purposes on March 5, 1920, and on March 9, 1920, and unlawfully transported whisky on the last-named date, and did not in good faith conform with and otherwise violated the laws of the United States and the regulations pursuant thereto, respecting the sale of distilled spirits for other than beverage purposes; that on the 17th day of August, 1921, because of such violations the said permit which had been granted to the said Engelberg was canceled upon due and proper notice, and that notice of such cancellation was given to the said defendant; that by reason of these facts the defendant made and suffered a breach of the conditions in each of the bonds, and that thereupon the full amounts became forfeited to the United States to recover the amounts of which the action has been brought.

"Assuming the truth of these averments, must the United States aver the specific damage suffered, and is its recovery limited to such loss? Or, on the other hand, is the sum named in the bond a penalty or forfeiture, inflicted by the government for a breach of its laws? It seems to me that this question is definitely answered, the answer being based on the soundest reasoning, by the text-book writers and the decisions of the Supreme Court. It may be stated as a general rule that, where a bond is given as an indemnity between private persons, the sum fixed will usually be regarded as a penalty, which limits the amount of recovery for the damage actually sustained. But this is by no means a universal rule. It is sometimes evident that the amount named is clearly intended as stipulated or liquidated damages, in which case the intention thus manifested will be given effect. In some cases such intention is expressed in the obligation itself, and in others the intention is manifest or will be presumed because of the difficulty or impossibility of measuring the damages sustained. But this rule does not apply where a penalty or forfeiture is imposed by statute, upon the doing or omission of certain acts, nor to those cases where bonds are given to the state. In Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780, Justice Matthews discusses the question on principle and with great clearness, and reviews the authorities, reaching a decisive conclusion on the question. In that case the state of Rhode Island authorized by an act of the Legislature a railroad company to extend within the limits of the state a certain road which it had acquired. The act of assembly contained these words:

" 'This act shall not go into effect unless the * * * company shall within ninety days from the rising of this General Assembly, deposit in the office of the general treasurer their bond, with sureties satisfactory to the Governor of this state, in the sum of $100,000, that they will complete their said road before the first day of January, 1872.' Loc. & Priv. Acts. R. I. 1869, p. 193. sec. 12.

"The bond containing that condition was given, the road was not completed, and an action was brought and recovery had for the penal sum named in the bond. Justice Matthews cites the case of United States v. Montell, 26 Fed. Cas. 1293, No. 15.798, wherein it was held, Chief Justice Taney writing the opinion, that a sum secured by bond under an act of Congress, conditioned that the registry of a vessel should be used solely for the vessel for which it was granted, and should not be disposed of to any person whatsoever, and if the vessel was lost or prevented from returning to port, or the vessel be sold, that the registry shall be delivered up to the collector, was a penalty or forfeiture inflicted by the sovereign power for a breach of its laws, not a liquidated amount of damages due under a contract, but a fixed and certain punishment for the offense, and not the less so because security was taken before the offense was committed. Justice Matthews held that the bond in question required the railroad company to obey the law and complete their road as the law required; that the language meant that in case of failure they should forfeit and pay the sum named; that, if it did not mean that, it did not mean anything, and the court was not at liberty to adopt such a meaning: that no rule of construction would be adopted which defeated the very object of the law: that the state was dealing with one of its own corporations, and had a right to act upon its own policy and prescribe its own terms as conditions of powers and privileges sought from its authority. A decree was accordingly entered for the sum of $100 000, the penal amount of the bond, although there was neither averment nor proof that the state or its citizens had suffered any actual loss.

"In Illinois Surety Co. v. United States, 229 F. 527, 143 C. C. A. 595, the Circuit Court of Appeals of the Second Circuit said: 'The general rule is that in case of a penalty the measure of damages is the actual loss which has been sustained as a result of the breach where this can be ascertained. But in the case of liquidated damages there can be a recovery of the whole amount where such a recovery is consistent with the policy of the law. And generally the courts construe the sum mentioned in a bond as a penalty, considering it merely as a security for the damage actually sustained by the breach of the condition and they limit the recovery to an

amount compensatory therefor. But while the above doctrine is that which courts usually enforce they do not apply it in all cases. And they do not apply it in the case of bonds running to the government.'

"In that case the bond involved contained different conditions, and the court held that, if it had been given to an individual instead of to the government, it might be important that it contained no less than 16 conditions of varying importance, as courts have held that where an agreement contains several distinct and independent covenants, upon which there may be several breaches, and one sum is stated to be paid upon the breach of performance, that sum is to be regarded as a penalty, and not liquidated damages. But in the case at bar, as the bond was given to the government, it would not be in the least material whether the bond contained 16 conditions or only one. The same rule has been laid down in Lyman v. Perlmutter, 166 N. Y. 410, 60 N. E. 21. In this case it was held that in cases between the government and a private party, in which the purpose of the bond is to secure an observance of law, in pursuance of which the bond is given, the penalty named in the bond is the measure of damages for its breach, unless the statute under which the bond is given, or the bond itself, indicates a less or different measure; that the affront is to the state and its sovereign will, and that when the statute has fixed its measure in money the court must award it.

"It is true there is some conflict in the decisions, the defendant relying mainly on State v. Estabrook, 29 Kan. 739. State v. Larson, 83 Minn. 124, 86 N. W. 3, 54 L. R. A. 487, and United States v. Wandmaker, 292 F. 24. the last case being a decision by the Circuit Court of Appeals of the Eighth Circuit. The decisions in these cases may or may not be justified by the facts upon which they are based. I will not attempt such reconciliation.

"I think the general rule above stated is in harmony with the great weight of authority. In most if not in every case, where the bond is given to the state, or to the government, to compel obedience of its law, no definite loss could be truly averred or definitely proved. To treat the sum named otherwise than as a penalty or forfeiture inflicted by the sovereign power for the breach of its laws, as a sum fixed as a certain punishment for the offense, would be to render worse than worthless the obligation so taken."

It is interesting to observe the court's remarks as to the meaning of the statute in requiring the bond, and the suggestion that a contrary view than there expressed would render the statutory provisions requiring the bond absolutely useless and meaningless. We consider the expressions therein in that regard equally applicable in the instant case. The only condition in the bond which we have under consideration was that the licensee would not violate the law prohibiting the sale of cigarettes to minors. There is nothing in our statute requiring a bond to be given for damages, nor do the statutes indicate that any damages are contemplated to have been guarded against, nor are there any taxes or statutory penalties secured thereby. The penalty provided in section 1, chapter 148, S. L. 1917, was not a civil penalty, but was a criminal penalty inflicted as an aid in deterring crime. We think it could scarcely be said that criminal penalties, even though they may involve the payment of a fine, are inflicted for the purpose of procuring revenue.

The case of Illinois Surety Co. v. United States, 229 Fed. 527, is likewise authority for the view we take on the question. Syllabus paragraphs 4 and 5 thereof provide:

"As a general rule, the measure of damages in the case of a penalty is the actual loss sustained; but in the case of liquidated damages there can be a recovery of the whole amount, where such recovery is consistent with the policy of the law.

"In an action on a bond running to the United States and given to procure the admission into the country of alien children under 16 years of age, a breach of any of the various conditions in the bond entitled the government to recover the full penalty of the bond, whether it had suffered damages or not, since, while the sum mentioned in a bond is generally construed as a penalty, and as security for the damages actually sustained, and the recovery is limited to an amount compensatory therefor, this rule does not apply in the case of bonds running to the government, and which are given to secure performance by means of a forfeit."

The case abounds with authorities supporting the view we have taken. We quote therefrom:

"The answer simply denies that the alleged breach of the bond has been committed, and also that the sum of $1,000 is due and owing to the United States by reason of the premises set forth in the complaint. At the close of the case counsel for the defendant moved to dismiss the complaint. In so far as the motion was based on the absence of adequate proof showing any breach of the condition of the bond, this court is not at liberty, for the reason above stated, to consider it. And for the same reason this court

cannot look into the record to discover whether there is proof that the plaintiff suffered any damages because of any omission on the part of defendant to perform the obligation imposed by the bond. But if we were at liberty to do so, and should find a total absence of proof that the United States had suffered any damages, it could not defeat the action or afford any reason for the dismissal of the complaint. If this bond had been given to an individual, instead of to the government, it might be important that it contained no less than 16 conditions of varying importance; for courts have held that where an agreement contains several distinct and independent covenants, upon which there may be several breaches, and one sum is stated to be paid upon the breach of performance, that sum is to be regarded as a penalty and not liquidated damages. Lampman v. Cochran, 16 N. Y. 275; Hoagland v. Segur, 38 N. J. Law, 230; Chase v. Allen, 13 Gray (79 Mass.) 42; Keck v. Bieber, 148 Pa. 645, 24 Atl. 170, 33 Am. St. Rep. 846. That doctrine was applied by the Supreme Court in Bignall v. Gould, 119 U. S. 495, 7 Sup. Ct. 294, 30 L. Ed. 491 (1886). But in the case at bar, as the bond was given to the government, it would not be in the least material whether the bond contained 16 conditions or only 1.

"The general rule is that in case of a penalty the measure of damages is the actual loss which has been sustained as a result of the breach where this can be ascertained. But in the case of liquidated damages there can be a recovery of the whole amount where such a recovery is consistent with the policy of the law. And generally the courts construe the sum mentioned in a bond as a penalty, considering it merely as a security for the damage actually sustained by the breach of the condition and they limit the recovery to an amount compensatory therefor. But while the above doctrine is that which courts usually enforce, they do not apply it in all cases. And they do not apply it in the case of bonds running to the government. The rule is correctly stated in Sedgwick on Damages (9th Ed. 1912) section 416a, as follows:

" 'In the case of a bond in a penal sum given to the state or a city not to secure it against actual ascertainable loss, but in order to secure performance by means of a forfeit, of a contract entered into for the public benefit, the recovery is for the full amount of the penalty; for the damages would usually be difficult or impossible of ascertainment and the intention of the parties is held to be that an absolute forfeiture is contemplated.'

"In Sutherland on Damages (3d Ed.) vol 1, sec. 279, the law is stated as follows:

" 'Without express statutory authority, officers who are authorized by law to make contracts for a state or municipality have power to fix a sum as liquidated damages for their violation. The sum designated in the contract or subsequently agreed upon becomes, in the happening of the event on which its payment depends, the precise sum to be recovered and the jury are confined to it. Nor will equity relieve from it.'

"The question came before Chief Justice Taney in United States v. Montell, Taney, 26 Fed. Cas. p. 1293, No. 15,798 (1841)—a case in the Circuit Court for the District of Maryland. The bond was conditioned that the registry of a vessel should be used solely for the vessel for which it was granted, and should not be disposed of to any person whatsoever, and that if the vessel should be lost or sold the registry should be delivered up to the collector. The condition had been broken and the government was allowed to recover the full amount of the bond. Chief Justice Taney said:

" 'The United States are entitled to recover the whole sum, for which the party is bound, if any one of the conditions is broken. Besides, how could the United States prove any particular amount of damages to have been sustained by them in a suit on this bond? What do they lose? It would be difficult, I think, by any course of proof, or any process of reasoning, to show that the United States had sustained any particular amount of damages in a case of this description, or to adopt any rule by which the damages could be measured by a jury, or be liquidated by agreement between the parties. The sum, for which the parties are to become bound, is manifestly a penalty or forfeiture, inflicted by the sovereign power for a breach of its laws. It is not a liquidated amount of damages due upon a contract, but a fixed and certain punishment for an offense. And it is not the less a penalty and a punishment, because security is taken before the offense is committed, in order to secure the payment of the fine if the law should be violated.'

"The leading case upon the subject is that of Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780 (1883). In that case a bond had been given to the state of Rhode Island in the sum of $100,000 to secure the construction by a given date of a railroad extension. The bond was declared forfeited in the full amount by reason of the obligor's default, although no pecuniary damages were shown to have been sustained by the state. In the opinion Mr. Justice Matthews pointed out the distinction between private obligations and bonds given to the sovereign for the purpose of promoting a public interest or policy, and he stated that in the latter class of cases there can be no intention of indemnification, for the reason that the state can gain nothing in its political or sovereign character by the performance of the conditions nor lose anything by a default."

As further illustrative of the rule that the

courts will construe a bond in accordance with its terms and obligations, and in accordance with the statutes requiring the giving of same, there has come to our attention the early case of Lightner v. Commonwealth, 31 Pa. 341, decided by the Supreme Court of Pennsylvania in 1858. Therein the same contention was made as here. Therein we find the following:

"* * * and paid the fine imposed, with the costs. In obedience to the tenth section of the act, the District Attorney then caused judgment to be entered upon the bond, and proceeded to enforce its collection. Upon the trial, the defendant contended that the bond was intended only as security for whatever fines and costs might be imposed, and that a breach of the condition worked a forfeiture only to that extent. The court, however, ruled that the forfeiture was entire instead of partial, and this presents the principal question in the case.

"Under the Act of Assembly, the required condition of the bond is. not that the obligor will pay whatever penalties may be imposed upon him by the Court of Quarter Sessions, but that he will faithfully observe all the laws of this Commonwealth, relating to his business. The bond would seem, therefore, to be substantially an agreement by the obligor to pay the stipulated sum, on condition that he fails to observe all the laws of the commonwealth relative to the sale of intoxicating liquors.

"That it was not intended merely to secure the payment of fines imposed, and costs may also be argued from the fact that the statute requires imperatively, 'Whenever any judgment for any forfeiture or fine shall have been recovered, or conviction had for any violation of the provisions of this act, or any other law for the observance of which said bond shall be conditioned,' that the district attorney shall enter judgment upon it, and institute suit upon that judgment; without regard to the fact that the fine imposed may have been paid. Why institute suit if nothing can be recovered?

"Again the proceedings directed to be instituted upon the judgment are declared by the statute to be 'with like effect,' as those upon forfeited bonds and recognizances. Yet, in suits upon these the whole penalty is recovered, unless it has been remitted or moderated, by the court in which said bond or recognizance has been taken. It must not be overlooked that the effect spoken of by the statute is not such as attends a suit upon an official bond; in which, though the judgment is for the penalty, the execution is awarded only for the amount of damages sustained by the party aggrieved, by the act which works a forfeiture.

"If anything more were needed, to show that this is a correct construction of the obligation, it might be found in the 31st section of the act. That section makes provision for the distribution of the fines recovered, and, after enacting that a portion of the fine or penalty shall be awarded to the informer, declares that 'the residue, as well as the proceeds of all forfeited bonds, as aforesaid, shall be paid to the directors of the public schools,' etc. Those directors are therefore entitled, not only to the fine recovered, that is, actually paid, but in addition thereto, to the proceeds of the forfeited bond. Yet. there can be no such proceeds, if the construction of the plaintiffs in error prevails."

And that the Legislature may provide otherwise is further illustrated by a subsequent case from the Courts of the Several Counties of Pennsylvania in Commonwealth v. Johnson, 8 Pa. Co. Ct. R. 378, where it was held that the amount of the recovery was limited to the amount of a fine or forfeiture by reason of later enactments of the Legislature.

A further case supporting our conclusion is Lyman v. Rochester Title Ins. Co. (Schenck et al.), 55 N. Y. Supp. 770. Syllabus one thereof is in point as follows:

"Sec. 18 (Laws 1896, c. 112) requires applicants for liquor tax certificates to execute a bond conditioned that the applicant will not violate the liquor tax law, and that, if a certificate be issued, and he violates said law, the penalty of the bond shall become due, and the principal and surety shall be jointly and severally liable. Section 34 provides that violations of said act shall be punishable by fine or imprisonment or both, and section 36 provides that on conviction for a violation of the act judgment shall be entered against accused for the amount of fine and costs imposed. and, if it be not paid, execution shall issue thereon; and, if the judgment debtor shall have given the bond provided for in section 18. the county treasurer or special deputy commissioner may proceed to collect the judgment from the sureties. Held, that in case of a violation of the law by the principal the surety is liable for the penalty of the bond, and not merely for the amount of fine and costs imposed on the principal on conviction for such violation."

Therein the court, in discussing the question, said:

"The bond in question was given, and all the alleged breaches of its conditions occurred, during the year 1896, and therefore the liability of the appellant must be determined by the bond itself, and by the statute as it existed at that time. It is elementary that, where a bond is given in pursuance of

a statute, the provisions of the statute are, in effect, a part of the bond. McCluskey v. Cromwell, 11 N. Y. 593. People v. Chalmers, 60 N. Y. 154. The statute constitutes a part of the contract of the surety. People v. Pennock, 60 N. Y. 421, 425, Section 11 of chapter 112 of the Laws of 1896 specifies the amount of tax which must be paid for a liquor tax certificate. The defendants Schenck were lawfully required to pay, and did pay, the sum of $300, and a liquor tax certificate in due form was issued to them. Section 18 of the act provides, in substance, that the applicant for a liquor tax certificate must execute a bond to the people of the state of New York, with sureties, in double the amount of the sum paid for the liquor tax certificate, containing, among others, the provision that, if such certificate is given, he, the applicant, will not violate any of the provisions of the liquor tax law while engaged in the business of trafficking in liquors under such certificate. And the section further provides that the bond so executed must contain, in substance, the agreement that, if a liquor tax certificate is issued to such applicant, and he violates any of the provisions of said liquor tax law, the penalty of such bond shall become due and payable to the people of the state, and that the principals and sureties upon said bond shall be jointly and severally liable for the payment of the same. The bond in this case follows substantially the language of the section. Section 31 of the act provides, among other things, that it shall be unlawful for any person holding a liquor tax certificate of the kind issued to the defendants Schenck to sell liquor on Sunday. It is clear that, if the language of the bond and of section 18 of the act, under which it is given, is only considered the liability of the defendant insurance company would be established upon proving that the defendants Schenck sold liquor on Sunday, as alleged in the complaint. The contention of the defendant insurance company, stated broadly, is that no liability can exist against it upon the bond which it executed as surety, until the liability of its principals has been established, as provided by section 36 of the liquor tax law. That section provides, in substance, as follows:

" 'Upon the conviction and sentence of any person for a violation of the provisions of this act, the court imposing the sentence, or the clerk of the court, if there be a clerk, shall forthwith make and file in the office of the clerk of the county in which such conviction shall have been had, a certified statement of such conviction and sentence, and the clerk of said county shall immediately thereupon enter in the docket book kept by said clerk for the docketing of judgments in said office, the amount of the penalty or fine and costs imposed, as a judgment against the person or persons * * * so convicted and sentenced, and in favor of the state commissioner of excise. * * * If said judgment shall not be paid within five days after such conviction and sentence, the clerk of said county shall issue an execution against the property of said judgment debtor or debtors against whom such judgment is docketed, to the sheriff of the county, who shall forthwith proceed to collect the amount due on said judgment, together with his legal fees and costs, by levy and sale in the manner now provided by law. * * * In case said judgment debtor or debtors shall have given the bond provided for in section 18 of this act, such county treasurer or special deputy commissioner may proceed to collect the amount of such judgment, together with the costs of collection, from the sureties on such bond by due process of law.'

"Section 34 of the statute specifies the penalty which may be imposed for a violation of the provisions of the liquor tax law. In substance, it provides that any violation of the law by the holder of a liquor tax certificate shall be a misdemeanor, and that upon conviction therefor he may be punished by fine or imprisonment, or both, in the discretion of the court before whom such conviction is had; and, in addition, in most cases, upon such conviction the liquor tax certificate is required to be canceled by the judgment of the court, and the holder thereof disqualified from again engaging in the business of trafficking in liquors for a period of five years. If the defendants Schenck are guilty of violating one of the provisions of section 31, as alleged in the complaint, to wit, guilty of selling liquor upon Sunday, upon conviction for such offense they may be punished by fine or imprisonment, or both, in the discretion of the court before whom such conviction is had; and the sureties upon the bond, if given, are liable to the amount of the fine imposed. But if this is the entire liability of the obligors upon a bond like the one in question, no force or effect is given to the express agreement contained in the bond. That agreement, which is in accordance with the provisions of section 18, under which it is given, is that, if a person holding a liquor tax certificate violates any of the provisions of the liquor tax law, the obligors upon the bond will forfeit to the people of the state double the amount of the tax paid by the holder of such certificate. The meaning of the agreement cannot be uncertain if words are given the ordinary significance. It is that the obligors upon the bond will pay to the people of the state of New York the sum of $600, in case the principals in the bond violate any of the provisions of the liquor tax law. It is urged that such is not the true meaning of the bond by reason of the provisions of the other sections of the statute, which have been referred to. If such was not the agreement intended, but instead it was intended that the liability of the sure-

ties should be limited to such fine as might be imposed upon the holder of the liquor tax certificate in case of conviction for such violation by him, hardly less appropriate language could have been used by the Legislature to express such intention. We think that the scope and purpose of the statute in question is plain; that when the language of the bond, of section 18 under which it is given, and of the other provisions of the act, is all considered, and the words used are given their ordinary meaning, the different provisions of the statute will be found to be in entire harmony, and to express clearly a reasonable purpose and intent on the part of the Legislature. By the statute, as a whole, two methods are provided for compelling the observance of the liquor tax law by those engaged in the business of trafficking in liquors: First, in case of any violation of the law by a holder of a liquor tax certificate, who has given a bond as provided for in section 18 of the act, a civil action may be maintained against the obligors upon said bond to recover the penalty of such bond. This may be done before the institution of any criminal proceedings, before such delinquent is convicted, and entirely independent of the provisions of section 34 or 36 of said act. Or, second, the holder of a liquor tax certificate, who has violated any of the provisions of the liquor tax law, may be proceeded against criminally, and, if found guilty, such person may be punished by fine or imprisonment, or both, in the discretion of the court before whom such conviction is had; and, if a fine is imposed, the surety upon a bond such as the one in question is liable for the amount of such fine. Such construction gives force and effect to all the provisions of the statute involved in this case. If we have correctly construed the provisions of the statute, and properly interpreted the meaning of the bond in question, it follows that the complaint states a cause of action against the defendants."

The case is similar in many respects to the case we have under consideration, and effectively disposes of the suggestion made by the defendants here that no liability could exist under the bond until the principal was convicted of violating the law prohibiting the sale of cigarettes to minors.

It is our conclusion that the bond required by the statute and given in the instant case was given as a fixed penalty for the face amount thereof for the purpose of aiding the enforcement of a criminal law of the state, and was required and given to secure performance by means of a forfeit, and under the authorities above discussed we hold that a sale of cigarettes to minors, as shown by the evidence here, is a breach of the condition of the bond, and that the state may

recover the full amount thereof without allegation or proof of damages.

With reference to the contention that the evidence discloses that the cigarettes were sold to Henry W. Hoel, an adult, we observe that this contention is based largely upon the fact that the minor accompanied Mr. Hoel, the assistant county attorney, as a member of the investigating party, and performed the act of purchasing the cigarettes at Mr. Hoel's request. The minor testified with reference to the actual purchase as follows:

"Q. Tell what happened after you got into the store? A. Well, after I got there, the woman was setting out in front and she followed me in, and she asked me what I wanted, and I told her I wanted a package of cigarettes and she asked me if my folks cared if I smoked, and I said no; and she asked me if I knew how to run the machine and she helped me to put the dime and nickel in it and I pulled the lever on the front of it and the cigarettes come out. I don't remember the words exactly she said in telling me."

Inasmuch as we have concluded that the cause must be remanded for further trial, we will not enter upon a detailed discussion of the effect of the evidence, further than to say that the same would be sufficient to support a verdict or finding that the sale was made to a minor, and not to some other person.

Regarding the question that the evidence fails to disclose that the party who sold the cigarettes was the agent of the Vending Machine Corporation of America, we observe from the answer that the defendant admits ownership of the machine, and that it was engaged in retailing cigarettes by means thereof. The evidence discloses that such machine was located in a place such as is customarily used by the defendant for the purpose of operation, and that it was displayed for the purpose of making sales and was in working order for such purpose, and that the lady was ostensibly in charge of the establishment wherein the machine was located, and rendered the minor assistance in the operation thereof. We are satisfied that the evidence and the reasonable inferences to be drawn therefrom are sufficient to justify a conclusion that the sale here made was made by the defendant through its usual and customary method of selling cigarettes.

It follows that the trial court erred in sustaining the demurrer to the plaintiff's evidence, and the cause is remanded, with

directions to grant a new trial and proceed consistent with the views herein expressed.

McNEILL, C. J., and RILEY, PHELPS, and CORN, JJ., concur.