(No. 33308.—

THE PEOPLE *ex rel.* B. H. Schull, Director of Mines and Minerals, Appellee, *vs.* MASSACHUSETTS BONDING AND INSURANCE COMPANY, Appellant.

*Opinion filed October 25, 1954.*

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (ALFRED F. NEWKIRK, and JAMES M. WINNING, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., MARK O. ROBERTS, and LEE D. MARTIN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The People of the State of Illinois, on the relation of B. H. Schull, Director of the Department of Mines and Minerals, brought this action against the Massachusetts Bonding and Insurance Company, surety on a bond exe-

cuted pursuant to section 6 of the Oil and Gas Act. (Ill. Rev. Stat. 1953, chap. 104, par. 67.) The complaint was filed August 17, 1953. It alleged that the bond was executed in November of 1946 as a condition to the issuance of a permit to drill an oil well, and that the condition of the bond was that the principals should fully comply with the provisions of the Oil and Gas Act. The breach assigned was that the principals failed to restore the surface of the well site to its former condition, as required by the statute. Defendant moved to dismiss on the ground that the complaint failed to allege any injury resulting to the plaintiff by reason of the breach of the condition of the bond. The motion was overruled. Defendant then filed an answer alleging that after the filing of the complaint the defendant, at its own expense, caused the well site to be restored to the satisfaction of the Department. Plaintiff's motion to strike the answer and for judgment on the pleadings was allowed, and judgment was entered for the plaintiff for the full amount of the bond, $1000, plus interest and costs. Defendant appeals.

The case turns upon whether the bond is to be read as an undertaking to indemnify the State for such actual damages as it might sustain by reason of a breach, or as fixing a penalty to be recovered upon breach without regard to actual damages. The defendant's position is that the bond is an indemnity bond, and that the trial court therefore erred in not requiring the plaintiff to allege and prove "the degree, nature and amount of damage, if any, incurred as a result of the breach of the bond." Except as it may bear upon this issue, defendant does not argue that its liability is affected by its belated restoration of the well site to its original condition.

It is settled that bonds which are conditioned upon compliance with law and are given to public bodies in connection with the grant of a license or permit, are construed to be penalty bonds unless evidence of a contrary purpose

appears in the governing legislation, the regulations adopted under it, or the bond itself. (*Clark* v. *Barnard,* 108 U.S. 436; *United States* v. *Engelberg,* 2 Fed. 2d 721 (C.C.A. 6); *O'Kane* v. *Ledered,* 4 Fed. 2d 418 (E.D. Pa.); *Lyman* v. *Perlmutter,* 166 N.Y. 410, 60 N.E. 21; see anno., 103 A.L.R. 405.) This construction is based upon the view that the purpose of such bonds is to secure observance of the law, and that to limit their obligation to actual damages sustained by the public body would frustrate that purpose and reduce the requirement of a bond to an empty formality.

The statute here involved requires that a bond be furnished to "* * * provide for the compliance of plugging such well, or wells, the filling of all excavations, the removal of all concrete bases, discarded machinery and material, and restoring the surface as nearly as possible to its former condition before such well, or wells, was drilled; * * *." (Ill. Rev. Stat. 1953, chap. 104, par. 67.) The intent to secure compliance with the law seems clear. The condition of the bond itself is that the principal fully comply with the provisions of the act and with the rules, regulations and orders of the Department. It is hard to think of any way in which the State could sustain actual damage from a failure to restore a well site to its original condition, unless it happened to own property nearby. A legislative purpose to secure indemnity for the State against the random chance of damage to it alone, among all property owners, can hardly be distilled from the language of the statute and the bond before us.

The defendant, however, argues that the legislature has supplied a measure of damages by an amendment to the Criminal Code which made the failure to restore a well site to its former condition a misdemeanor, punishable by a fine not exceeding $100 for the first offense, and by a like fine, and imprisonment in the county jail for not exceeding three months, for a subsequent offense. (Ill. Rev.

Stat. 1953, chap. 38, pars. 466, 467.) It argues that while the Oil and Gas Act, enacted in 1941, "failed to assert that a breach of the bond would be injurious to the State, and failed to provide a method of determining the amount by which the State would be injured, the General Assembly, in 1943, passed an Act which corrected this situation. * * * By amending Section 221 of the Criminal Code the legislature declared that the acts or omissions added by the amendment were injurious to the State, and Section 222 provides the standard for determining the degree of injury sustained."

Our examination of the authorities does not suggest the existence of any requirement of an express legislative assertion that non-compliance is injurious to the State. Nor, so far as we are aware, do statutes which require compliance bonds typically contain such assertions. To assume that the Oil and Gas Act needed correction or supplementation is to assume the answer to the question at issue, for unless the bond was intended only to indemnify, there was no necessity to provide a means of determining the amount by which the State was injured. The absence of such a provision rather indicates that the bond was not intended as an indemnity bond.

The suggestion that the General Assembly intended to supply a deficiency in the Oil and Gas Act by the roundabout method of amending the Criminal Code seems implausible on its face. Criminal sanctions are themselves penal in character, and the extent of the penalty is not based on an advance estimate of the dollar and cents damage which would result from a violation. Under defendant's hypothesis, there can be no recovery upon the bond which it executed as surety unless the principal has been fined or imprisoned. If the principal dies, or becomes insane, or cannot be found, (the principals on the bond in this case are non-residents) there can be no recovery on the bond. In the event of a successful prosecution, the fine itself, and

the taxable costs, would of course be readily ascertainable. But it is not suggested how the expenses inevitably incurred in prosecuting the offense can be ascertained, or the cost of confining a particular prisoner determined. The only authority upon which defendant relies to support its position is *State* v. *Estabrook,* 29 Kan. 739. It is sufficient to note that the doctrine of that case has not won approval. See *State* v. *Vending Machine Corporation of America,* 174 Okla. 603, 51 Pac. 2d 724; 103 A.L.R. 391; *United States* v. *Engelberg,* 2 Fed. 2d 720, (E.D. Pa.)

Defendant also contends that unless the bond is construed as an obligation to indemnify the State for its actual damages, gross discrimination will result among permittees. This contention is based on the provision of the statute that an applicant for a permit "* * * shall execute and file with the department a bond of $1000.00 for each of such wells, or in lieu thereof, a blanket bond in the sum of $2500.00 for all wells * * *." It is pointed out that one permittee who drills five wells and files a separate bond for each well may incur a liability of $5000.00, while another permittee, who also drills five wells but files a blanket bond, would incur a liability of only $2500.00.

We do not believe that this circumstance points to the construction which defendant seeks. As between permittees who drill numerous wells the asserted discrimination would be self-imposed, resulting from failure to file a blanket bond. So far as the permittee who drills a single well is concerned, experience may have persuaded the General Assembly that the larger operator is less likely to be irresponsible, and more likely to comply with the requirements of the statute.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*