## 30611. ACCIDENT AND CASUALTY INSURANCE COMPANY *et al. v.* COOK, revenue commissioner.

DECIDED FEBRUARY 6, 1945. REHEARING DENIED MARCH 28, 1945.

*MacDougald, Troutman & Arkwright,* for plaintiffs in error.

*T. Grady Head, attorney-general, Fred B. Davis, Victor Davidson, assistant attorneys-general,* contra.

MACINTYRE, J. This case is brought to this court by the defendants in the court below, complaining of alleged error committed by the trial court, (a) in overruling a general demurrer to the petition, and, (b) while acting by agreement of the parties as trier of the facts, in rendering judgment, under an agreed statement of facts, in favor of the plaintiff and against the defendants. The exceptions to these rulings present the same issue, and that is, the liability assumed by the principal and surety under the bond here involved. In other words, was the bond (1) a forfeiture bond in which the principal amount was to be paid in the event of a breach upon establishment of that fact, regardless of whether or not any

actual damage had been sustained, or the amount thereof; or (2) a penalty bond in which the sum named was the limit and not the measure of liability? J. Eugene Cook, as Commissioner of Revenue and head of the Department of Revenue of the State of Georgia, brought suit, as successor in office to J. M. Forrester, for the use of the State of Georgia, against John Abraham Thomas, as principal, and Accident and Casualty Insurance Company of Winterthur, Switzerland, as surety. The petition alleged in substance: That John Abraham Thomas applied for and was issued a license in January, 1943, to conduct a retail liquor store in Chatham County, Georgia (a wet county), executing a bond as principal, which Accident and Casualty Insurance Company of Winterthur, Switzerland, signed as surety, to the then commissioner of revenue and his successor in office, in the principal sum of $2500. The bond was filed under the provisions of the alcoholic-beverage and liquor-control act. Section 10 of the act (Ga. Code Ann., § 58-1045), reads as follows: "Before any license is granted applicant must file with the revenue commissioner corporate surety bond in a surety company licensed to do business in the State, conditioned to pay all taxes due the State of Georgia, in amounts as follows: distillers, $10,000; wholesalers, $5000; retailers, $2500; said bonds to be approved by the revenue commissioner, and shall be executed on forms as may be prescribed by said commissioner. *Said bonds shall be of form prescribed by the State Revenue Commissioner and shall be conditioned, among other things, that the applicant when granted a license to sell distilled spirits and alcohol, shall pay all sums due the State and comply with all the rules and regulations governing the sale of distilled spirits or alcohol, and such other conditions as the State Revenue Commissioner may require in his rules and regulations.*" (Italics ours.) The regulations of the revenue commissioner required a bond which "shall bind the applicant, among other things, to pay all taxes, license fees, and other charges of any kind or character due the State, and to *faithfully comply with all provisions of law* and all regulations governing the sale or distribution of alcoholic beverages, whiskies, *or liquors as required by the act.*" (Italics ours.)

The conditions of the bond were as follows: "Now, therefore, should the said principal above named promptly pay to the obligee for the use of said State all sums which may become due by said

principal to the State of Georgia as taxes, license fees, rental charges, or otherwise, by reason of, or incident to, the operation of said business, together with expenses incurred by the State in the collection of any tax due the State, the amount of expense to be determined by the commissioner but not to exceed one hundred ($100.00) dollars, and *shall faithfully comply with all laws,* rules, and regulations *governing alcoholic beverages, and distilled spirits or alcohol as required by the act aforesaid,* and such other conditions as the State Revenue Commissioner may by rules and regulations require, then this bond shall be void, otherwise to remain of full force. This bond is continuous from its inception to its termination, and the indemnity for separate periods shall not be cumulative." (Italics ours.) The State contends that the defendant Thomas failed to comply with certain requirements of the laws of the State of Georgia, and the regulations issued pursuant thereto, respecting distilled spirits and alcohol, and violated the requirements of the laws and regulations such as are alleged in paragraphs 6, 7, and 8 of the petition, in that, "on December 14, 1943, said defendant, John Abraham Thomas, was found in possession at his place of business in said State, for the purpose of sale, of certain whisky which did not bear the evidence of payment of the Georgia tax thereon as required by the said act of February 3, 1938 ([Ga.] Code [Ann.], § 58-1046), in violation of the laws of Georgia, and the rules and regulations of the Commissioner of Revenue of Georgia, governing the sale of alcoholic beverages and distilled spirits. (7) That on or about December 15, 1943, during the period that the bond in 'Exhibit A' [the bond in question] was in force, said defendant, John Abraham Thomas, purchased and received at his place of business in Georgia, for the purpose of sale in Georgia, distilled spirits or alcohol as defined by said act of February 3, 1938, which said distilled spirits or alcohol did not bear the tax stamps provided for by said act, in violation of the laws set forth in said act ([Ga.] Code [Ann.], § 58-1057), and in violation of the rules and regulations set forth in 'Exhibit B' hereof. (8) That on December 15, 1943, said defendant, John Abraham Thomas, failed to pay a tax of one dollar ($1.00) per wine gallon on seven and one-half gallons of distilled spirits and on four-fifths gallons of distilled spirits in his possession on which the tax due the State of Georgia had not been paid as required by said act of

February 3, 1938 ([Ga.] Code [Ann.], § 58-1046), in violation of the laws, rules, and regulations governing the sale of alcoholic beverages and distilled spirits." The defendants, in the agreed statement of facts, admitted paragraphs 6, 7, and 8, but further stated: "The allegations of paragraphs 7 and 8 relate to and cover the same fact and the amount of tax due by reason thereof is $10.10, which has not been paid. The defendant, John Abraham Thomas, was convicted and fined $100 for having this unstamped liquor in his possession. The fine was paid December 16, 1943."

"Generally speaking, where a statute requires the execution of a bond to a State or to the United States for a fixed penalty, conditioned upon a compliance with certain laws of a State or of the United States, the penalty named in the bond is the measure of damages for its breach, or rather is punishment inflicted by the sovereign for the violation of a pledge to observe its law, unless the statute or the bond, read in the light of the statute, indicates a less or a different measure. The question is always one of construction, having regard to the entire statute, the governmental regulations framed to carry out the statute, and the language of the bond." State v. Vending Machine Corp., 174 Okla. 603 (51 Pac. 2d, 724, 103 A. L. R. 391). It will be noted that the second sentence of section 10 of the alcoholic-beverage and liquor-control act (Ga. Code Ann., § 58-1045), says that, in the form of the bond prescribed by the State Revenue Commissioner, the licensee, the principal, shall be conditioned, among other things, to (1) pay all sums due the State, (2) comply with all rules and regulations governing the sale of distilled spirits and alcohol, and (3) such other conditions as the State Revenue Commissioner may require in his rules and regulations. Thus we think that there was no enumeration attempted, and that terms 1 and 2, which precede the general term 3, are themselves general, and there is no inference that the legislature attached to any of the general terms a restricted meaning. 2 Sutherland on Statutory Construction (3d ed.), p. 403, § 4912.

The language of the section furnishes no criterion by which to restrict its general words or to apply the restrictive rule of ejusdem generis, which rule has been stated thus: "Where general words follow special words in an enumeration, describing the legal sub-

ject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2 Sutherland on Statutory Construction (3d ed.), p. 395, § 4909. On the other hand, each of the terms of section 10 of the act (Ga. Code Ann., § 58-1045), are general and are unrestricted by association with the other general words used in this section. Upon a consideration of section 10 of the act, and of the act as a whole, we think the general words used in this section of the act, the regulations made pursuant thereto, and the bond were not used in the restricted sense, and that we should give effect to the conclusion afforded by the wider view and give the general words their natural, unrestricted meaning, in order that the will of the legislature shall not fail. Other than section 10, which deals in general words with bonds to be given pledging the enforcement of the act, the only other section of the act which mentions bonds is section 29 (Ga. Code Ann., § 58-1080), which reads as follows: "Any retail licensee wilfully and knowingly selling more than two quarts per day to any purchaser shall be guilty of a misdemeanor and shall be punished as for a misdemeanor, and in addition thereto shall be subject to the other penalties coming under the jurisdiction of the revenue commissioner, such as *suspension and revocation of license and forfeiture of bond.*" (Italics ours.) We think the italicized words in this section are illustrative of "the other penalties coming under the jurisdiction of the revenue commissioner," to which the offender is subjected for selling more than two quarts of the prohibited liquors in one day, and that the general terms of section 10 of the act (Ga. Code Ann., § 58-1045), as they relate to the taking of a bond to enforce the act, are not restricted by such words. We do not think that it would be a proper construction of the act to say that section 29 (Ga. Code Ann., § 58-1080), so restricts section 10 (Ga. Code Ann., § 58-1045), that the only bond that could be required and forfeited under the statute is one for the violation of section 29 where two or more quarts of the liquors mentioned in section 29 are sold in one day, since that would restrict the meaning of the general terms in section 10, so as to render them meaningless, unless they were applied to only one subsequent noncontiguous section of the many sections which make various other acts a violation of the liquor-control act. To so construe the act would thwart the meaning of the legis-

lature and would disregard "the primary rules, that effect should be given to every part of a statute if legitimately possible, and that the words of a statute or other document are to be taken according to their natural meaning." Mason *v.* United States, 260 U. S. 545 (43 Sup. Ct. 200, 67 L. ed. 396). See also 2 Sutherland on Statutory Construction (3d ed.), p. 407, § 4913 (3).

The question for our determination, therefore, is this: Is the bond sued upon one of indemnity, where only the actual loss which has been sustained is the measure of damages recoverable, or one of forfeiture, where the whole amount named in the bond is a penalty for its breach, and the measure of damages is the full amount of the bond, regardless of whether any actual damages have been sustained? We should not fall into the error of construing the bond on which this action is founded on the rule of law applicable between individuals, as to bonds given to secure the performance of some collateral agreement by the obligor. It is a bond given as a condition for the issuance of a license for the sale of intoxicating liquors (in a wet county) pursuant to the statutes of the State, and as security for the observance of the alcoholic-beverage and liquor-control act. In U. S. *v.* Engelberg, 2 Fed. 2d, 720, it is said: " 'The general rule is that in case of a penalty the measure of damages is the actual loss which has been sustained as a result of the breach where this can be ascertained. But in the case of liquidated damages there can be a recovery of the whole amount where such a recovery is consistent with the policy of the law. And generally, the courts construe the sum mentioned in a bond as a penalty, considering it merely as a security for the damage actually sustained by the breach of the condition and they limit the recovery to an amount compensatory therefor. But while the above doctrine is that which courts usually enforce they do not apply it in all cases. And they do not apply it in the case of bonds running to the government.' In that case [Illinois Surety Co. *v.* United States, 229 Fed. 527] the bond involved contained different conditions, and the court held that, if it had been given to an individual instead of to the government, it might be important that it contained no less than 16 conditions of varying importance, as courts have held that where an agreement contains several distinct and independent covenants, upon which there may be several breaches, and one sum

is stated to be paid upon the breach of performance, that sum is to be regarded as a penalty, and not liquidated damages. But in the case at bar, as the bond was given to the government, it would not be in the least material whether the bond contained 16 conditions or only one. The same rule has been laid down in Lyman *v.* Perlmutter, 166 N. Y. 410 (60 N. E. 21). In this case, it was held that in cases between the government and a private party, in which the purpose of the bond is to secure an observance of law, in pursuance of which the bond is given, the penalty named in the bond is the measure of damages for its breach, unless the statute under which the bond was given, or the bond itself, indicates a less or different measure; that the affront is to the State and its sovereign will, and that when the statute has fixed its measure in money the court must award it. . It is true there is some conflict in the decisions, the defendant relying mainly on State *v.* Estabrook, 29 Kan. 739, State *v.* Larson, 83 Minn. 124 (86 N. W. 3, 54 L. R. A. 487), and United States *v.* Wandmaker, 292 Fed. 24, the last case being a decision by the Circuit Court of Appeals of the eighth circuit. The decisions in these cases may or may not be justified by the facts upon which they are based. I will not attempt such reconciliation." The case of State *v.* Estabrook, supra, was referred to in *City of Albany* v. *Cassel,* 11 *Ga. App.* 745, 752 (76 S. E. 105), in which this court refused to follow the rule laid down in the Estabrook case, and expressly stated that it was in conflict with what this court was there deciding:

There is a line of authorities which quote and seem to follow the early Estabrook case. On the other hand, we think that the great weight of authority follows the rule of the still earlier case of United States *v.* Montell, 26 Fed. Cas. 1293, and among the many cases of similar import to the Montell case is United States *v.* Engelberg, supra; Clark *v.* Barnard, 108 U. S. 437, supra, where the law and the cases on this subject were considered and reviewed; State of Oklahoma *v.* Vending Machine Corp., supra, and the copious annotations referring to both lines of authorities, beginning on page 405 of 103 A. L. R.; and *City of Albany* v. *Cassel,* supra, where it is said: "The payment of a fine for a violation of the prohibition law by the obligor in the bond, or for a violation of a city ordinance regulating the same subject, would not be a satisfaction of the bond; and the municipality, for the breach

of the bond, could recover the amount stipulated therein as a penalty for its forfeiture, either as liquidated damages or as a penalty, notwithstanding the imposition of a sentence for a violation of the criminal statute or the ordinance, and the payment of fines imposed for such violations." See also *Campbell* v. *Thomasville,* 6 *Ga. App.* 212 (4) (64 S. E. 815), wherein it is stated: "The selling of 'near beer' [or dealing in intoxicating liquor] is a business which, from its very nature, admits of strict regulation under the police power. It stands legitimately in a different class from the business of selling drugs, soda water, and similar liquids. Regulations may be upheld as applied to this occupation which would be arbitrary and unreasonable if there were an attempt to apply them to other businesses." See in this connection, *McKown* v. *Atlanta,* 184 *Ga.* 221 (190 S. E. 571); *Phillips* v. *Head,* 188 *Ga.* 511, 514 (4 S. E. 2d, 240). The rule of strictness in the construction of penal statutes does not require an interpretation which defeats the very object of the law. Here the State of Georgia, as a sovereign, was dealing with its subjects, and it had a right to act upon its own policy and prescribe its own terms as conditions of powers and privileges sought from its authority. See in this connection, *Shirley* v. *Terrell,* 134 *Ga.* 61 (67 S. E. 436), where it is stated: "In a suit against the obligor and his sureties in a peace bond given in proceedings upon the Penal Code, § 1238 [Code of 1933, § 76-201], for a breach of the same, judgment for the full amount of the penalty stipulated in the bond will be awarded against the defendant and his sureties in case of a recovery."

The defendants; in their answer, stated that, "If the tax of $10.10 due on the said unstamped liquor was owing to the State, the principal and surety stood ready at all times to pay this claim, and denied that the petitioner was entitled to recover the maximum amount of the bond or any other sum in excess of said tax." However, in the instant case, the supposition is not open that the penalty was prescribed merely in terrorem to secure punctuality in performance with the reserved intention of permitting subsequent performance to condone the default, but the sum named in the bond was in the nature of a statutory penalty for the non-performance of a statutory duty and was given the State to secure the observance of the liquor-control statute in a wet county. Thus, when the prin-

cipal in the bond violated the conditions of the bond, as alleged in the petition, by possessing unstamped prohibited liquors, by purchasing and receiving in his place of business prohibited liquors for the purpose of sale, and by possessing prohibited liquors on which the tax due the State under the liquor-control act, had not been paid, it was such a breach of the bond that the State could recover the amount stipulated therein as a fixed penalty imposed by way of forfeiture by the sovereign authority. In other words, it is a fixed penalty imposed by law as punishment for a breach of duty enjoined by law, and the full amount stipulated in the bond is the measure of the damages, and for its breach, the statute having fixed the whole amount as its measure, the court must award it. For these reasons the judge did not err in overruling the general demurrer to the petition; nor did he err, while acting as trier, under an agreed statement of facts and by agreement of the parties, in rendering a judgment in favor of the plaintiff for the full amount stipulated in the bond.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, J. That part of the liquor-control act which is codified in Ga. Code Ann. as § 58-1045, authorized the revenue commissioner to make rules and regulations requiring as one of the conditions in the bond that the principal in the bond "shall faithfully comply with all laws . . governing the sale of alcoholic beverages," as provided in the act. The regulations of the revenue commissioner required such a condition in the bond. The bond here in question contained such a provision, and when the principal in the bond was guilty of violations of the law, as provided in §§ 58-1057 and 58-1046, which are codified from the liquor-control act now under consideration, he breached the bond and the State could recover the full amount stipulated therein, as a statutory penalty for a violation in a wet county of the liquor-control statute. This and all other matters in the motion having been considered, the motion for rehearing is denied.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*