1. Under the rule stated in Moore v. Harrison, 202 Ga. 814
(44 S.E.2d 551), the motion to dismiss is denied.
2. The general demurrers to the petition as amended, and to the cross-actions, were properly sustained.
 Nos. 16184, 16196, 16198. May 17, 1948. REHEARING DENIED JUNE 18, 1948.
On October 30, 1945, Telfair Stockton Company Inc. of New York filed in Fulton Superior Court, against Trust Company of Georgia, as executor and trustee under the will of W. H. Wynne, deceased, and against Mrs. C. W. Ashley, a petition which, as twice amended, alleged substantially the following: The petitioner was incorporated July 25, 1935, under the laws of the State of New York and under the name of The Mortbon Corporation. On June 30, 1945, the name of the petitioner was changed from *Page 803 
The Mortbone Corporation to Telfair Stockton Company Inc. The Mortbon Corporation took from The Mortgage-Bond Company of New York an assignment, the material provisions of which were:
"This indenture and bill of sale made this 21st day of October, 1935 by and between The Mortgage-Bond Company of New York, an investment company organized and existing under the laws of the State of New York, hereinafter called the `Company,' party of the first part, and The Mortbon Corporation of New York, a business corporation organized and existing under the laws of the State of New York, hereinafter called `Mortbon,' party of the second part.
"Witnesseth that: Pursuant to the Plan for Reorganization of all series of the Collateral Trust Mortgage Bonds of the Company which was approved by the Superintendent of Banks of the State of New York and by order entered May 10, 1935 by the Supreme Court of the State of New York in that certain proceeding under Chapter 745 of the Laws of 1933, as amended, which is identified by New York County Clerk's Index No. 20909-1934, and in compliance with the terms of said order and of the further order of the same court entered in said proceeding on September 30, 1935, and pursuant to resolutions duly adopted by the directors and stockholders of the Company in conformity with the said Plan and Court orders, and in consideration of the issue of all the capital stock of Mortbon now authorized and not subscribed for by its incorporators, and of the covenants and agreements by Mortbon hereinafter contained, the Company does hereby.
"Bargain and sell, grant, convey, assign, transfer, set over and deliver unto Mortbon all the assets, tangible and intangible, property, real, personal and mixed, business and good will of the Company (except its corporate franchise and name), and all its books and records;
"Together with all and singular the privileges and appurtenances whatsoever thereunto belonging or in any wise appertaining, and the rents, issues and profits thereof after May 31, 1935;
"To have and to hold the same and each and all thereof unto Mortbon and its successors and assigns forever; *Page 804 
"Subject, however, to the results of the operations of said business after May 31, 1935 and to the liabilities of the Company shown on its balance sheet of May 31, 1935, as reported by Messrs. Lybrand, Ross Bros. Montgomery, except the liability of the Company for principal and interest of its bonds (which is to be discharged by consummation of the said Plan for Reorganization), its liability with respect to its capital stock and the item carried on said balance sheet as a reserve for contingencies;
"And the Company does hereby covenant and agree that it will make and duly execute and deliver all such other and further instruments of transfer or conveyance as may be requested by Mortbon by way of further assurance or more particular description;
"And the Company does hereby covenant and agree that it will forthwith request and consent to the release of the lien of its Trust Agreement of October 1, 1906, and will perform and observe all other terms and conditions of the said Plan for Reorganization on its part to be performed and observed;
"And Mortbon does hereby covenant and agree that it will forthwith, upon release of the lien of said Trust Agreement, execute and deliver, with United States Trust Company of New York as Trustee, a Collateral Trust Indenture in conformity with the said Plan for Reorganization and the said order of September 30, 1935, and will perform and observe all other terms and conditions of the said Plan for Reorganization to be performed and observed on the part of itself as the new company provided for under said Plan."
At the time the assignment was made, The Mortgage-Bond Company had pending in the Superior Court of Fulton County, Georgia, a foreclosure proceeding against W. H. Wynne and Mrs. C. W. Ashley, based on principal notes secured by a deed to secure debt, conveying certain real estate in Fulton County. The said foreclosure proceeding was filed prior to October 21, 1935, and was pending at the time the assignment given by The Mortgage-Bond Company to The Mortbon Corporation was executed and delivered. Prior to the filing of the present petition, the corporate charter of The Mortgage-Bond Company was dissolved and surrendered in a voluntary proceeding filed by such *Page 805 
corporation in the Supreme Court of New York, and such corporation ceased to exist and can not be made a party defendant. Notwithstanding that the principal notes described in the foreclosure proceeding were assigned and delivered by The Mortgage-Bond Company to The Mortbon Corporation, the foreclosure proceeding was allowed by The Mortbon Corporation to proceed in the name of The Mortgage-Bond Company, and judgment was obtained in said proceeding on January 7, 1936, in the name of The Mortgage-Bond Company against W. H. Wynne and the other defendant named in the foreclosure proceeding. The judgment obtained against the defendants was levied upon the real estate therein described and was sold by the Sheriff of Fulton County on the first Tuesday in February, 1936, and the proceeds received therefrom were applied on the judgment. The principal amount of the judgment was $57, 523.06, with interest in the amount of $8673.30, and the proceeds received from the sale, in the amount of $1000, were credited on the judgment, leaving the balance thereof as a deficiency. The levy and sale of the property, though proceeding in the name of The Mortgage-Bond Company, were for the benefit of The Mortbon Corporation. After the foreclosure sale, the execution issued on the judgment, together with the notes, deed to secure debt, and all papers evidencing such indebtedness, have been in the possession, custody and control of The Mortbon Corporation and its attorneys. The judgment herein described is dormant and none of the judgment has been paid with the exception of the $1000 credited thereon. The petitioner is the owner and holder of all of the equitable interest in the judgment, although the legal title thereto has not actually been conveyed to it, no assignment of the judgment itself having been made to the petitioner under its present name or under its former name. W. H. Wynne, one of the defendants named in the judgment, died testate after the rendition of the judgment and the issue of the fi. fa. thereon; and his will, which has been duly probated, names Trust Company of Georgia as executor and trustee. Trust Company of Georgia has qualified as such executor and trustee more than twelve months prior to the filing of this petition, and is named as one of the defendants herein. The petitioner is without an adequate remedy at law and *Page 806 
brings this equitable petition to revive the dormant judgment, and to enforce it. The corporate charter of The Mortgage-Bond Company was dissolved on June 4, 1945. At that time there was pending in the Superior Court of Fulton County, a petition for scire facias in the name of The Mortgage-Bond Company to revive the judgment which had been obtained in the foreclosure proceeding, which is the same judgment sought to be revived in this proceeding. The petitioner had caused the scire facias to be filed for its benefit, and at the time of the dissolution of the corporate charter of The Mortgage-Bond Company the petitioner was seeking in the name of that corporation to revive the dormant judgment. On ascertaining that the corporate charter had been dissolved, the petitioner promptly caused the scire facias proceeding to be dismissed, and filed its equitable petition to revive the judgment. W. H. Wynne, the original judgment debtor, had full opportunity in the foreclosure proceeding to file any defense, make any objections, and testify to any matter or thing touching upon his liability under the notes and security deed upon which the judgment sought to be revived was rendered, the proceeding having been instituted and prosecuted to judgment during his lifetime. He filed no defense and interposed no objections. After rendition of the judgment, W. H. Wynne was no longer entitled to raise any defense thereto, in his own behalf or in behalf of any other person claiming under him, the judgment being conclusive on all issues raised or which could have been raised in the proceeding. Wynne not only was cognizant that the judgment was of record against him, but during his lifetime he avoided openly acquiring any real estate or other property in his name upon which the judgment could be levied; and for the petitioner to have begun steps to revive the dormant judgment or to take a transfer of the legal title to the judgment in its name during the life of Wynne, would have resulted in his more studiously avoiding the acquiring of any property in his name. Therefore, the petitioner has not been guilty of laches and no detriment has been suffered by those claiming under Wynne. The principal assets in the hands of the executor of W. H. Wynne, deceased, consist of the proceeds of the sale of real estate which was conveyed after the death of Wynne to the Trust Company of Georgia *Page 807 
as his executor and trustee. Promptly on learning of such conveyance, the petitioner took the aforesaid steps to revive the judgment. The petitioner prayed, that process issue, that the court pass an order reviving the dormant judgment and granting to the petitioner judgment against the defendants for the amount of the indebtedness, and for full and complete equitable relief under the facts alleged in the petition.
The defendant, Trust Company of Georgia, demurred on the ground, among others, that the amended petition "does not as a whole, nor do any of its several paragraphs or parts, set forth any cause of action," at law or in equity.
The defendant, Mrs. C. W. Ashley, filed an answer and a cross-petition in which she denied material allegations of the amended petition, and set forth in part the following: The effect of the assignment from The Mortgage-Bond Company to The Mortbon Corporation was to sell, transfer, assign, and convey to the latter corporation the promissory notes executed by W. H. Wynne and this defendant, the deeds to secure debt, and the legal title to the real property in question. While the foreclosure suit was pending, The Mortgage-Bond Company and the defendant consented and agreed for The Mortgage-Bond Company to enter into possession of the property under the rights that it had and to collect the rents and income from the property and to apply the rents and income on the debts of The Mortgage-Bond Company. After execution of the above assignment, The Mortgage-Bond Company continued to prosecute the foreclosure proceeding and obtained judgment against Wynne and this defendant. The legal title to the notes and property described in the security deeds, after the execution and delivery of the assignment, was in The Mortbon Corporation. Following the rendition of the judgment in the foreclosure proceeding, The Mortgage-Bond Company had a fi. fa. issued. In an effort to effect a levy of the fi. fa. on the real property, The Mortgage-Bond Company, on January 5, 1936, executed a quitclaim deed to Wynne, which recited that it was made for the purpose of levy and sale. The quitclaim deed was ineffectual to convey any title to Wynne that could be levied upon under the fi. fa., because at the time of the execution of the quitclaim deed The Mortgage-Bond Company had no title to the *Page 808 
real property, having already conveyed any and all title of every nature that it had to The Mortbon Corporation. An attempted levy and sale by the sheriff to Joseph A. West, the nominee and agent of The Mortbon Corporation, was void for the above reasons. Sufficient income has been collected to pay the indebtedness; and since the attempted sheriff's sale was void, the defendant is entitled to recover the real estate described in the security deeds. The cross-petition contained prayers seeking an accounting and recovery of the real property.
In addition to its demurrer, Trust Company of Georgia filed an answer in which it adopted the allegations of the cross-petition filed by Mrs. Ashley.
The court sustained the demurrer interposed by Trust Company of Georgia to the original petition as amended. The same order also sustained demurrers that were filed by Telfair Stockton 
Company, and struck the answer and cross-petition of the defendants. Exceptions pendente lite were filed by the respective parties to each of the above rulings on demurrer. Telfair Stockton Company Inc. also excepted pendente lite to an order over-ruling its demurrer to an amendment that Mrs. Ashley filed to her answer, setting up various reasons why the dormant judgment should not be revived.
Thereafter all issues of law and fact made in the cause were submitted to the court without the intervention of a jury, and at the conclusion of the trial the court passed a final order that the above ruling on the demurrers had fixed the law of the case so that the petitioner could not recover, and ordered final judgment for the defendant, Mrs. Ashley, for costs of court. The petitioner also excepted to this judgment.
In the bills of exceptions bringing the cases to this court, error is assigned by the respective parties on the exceptions pendente lite. Telfair Stockton Company Inc. in addition thereto excepted to the final judgment.
1. Headnote 1 requires no elaboration.
2. Under the allegations and prayers of the petition, two phases of equitable relief are sought. Without specific allegations that the petitioner is entitled to equitable subrogation, and without specific prayers for equitable subrogation, such relief is sought, in that the petitioner seeks the revival of a dormant judgment in equity, issued in the name of The Mortgage-Bond Company of New York, the revived judgment to be in the name of the petitioner.
The allegations of the petition are insufficient to show that the petitioner is entitled to either legal or conventional subrogation. Legal subrogation takes place as a matter of equity and without any agreement to that effect made with the person paying the debt, and is independent of both the creditor and the debtor. Legal subrogation is never applied for the benefit of a mere volunteer who pays the debt of another without any assignment or agreement for subrogation, and who is under no legal obligation to make such payment and not compelled to do so for the preservation of rights or property of his own. CorneliaBank v. First National Bank of Quitman, 170 Ga. 747
(154 S.E. 234).
In this case there is attached to the petition as Exhibit "A" a purported assignment from The Mortgage-Bond Company to The Mortbon Corporation. The assignment does not recite that The Mortbon Corporation has paid any amount in money therefor. Assuming, without deciding, that the recitals of such assignment as to consideration might amount to a valuable consideration if consummated, there is nothing to show any consideration, for the reason that the conveying clause of the assignment is followed by conditions or limitations, which neither the assignment nor the pleadings show were ever completed or effectuated so as to make any consideration or constitute any assignment, either legal or equitable, from The Mortgage-Bond Company to The Mortbon Corporation.
Paragraph 4 of the petition, as amended, alleges that The Mortbon Corporation took an assignment under date of October 31, 1935, and that a copy is attached to the petition as Exhibit "A." Paragraph 12 alleges that the petitioner is the owner and holder of the equitable interest in the judgment sought to be enforced, *Page 810 
although the legal title has not been conveyed to the petitioner, no assignment of the judgment having been made. Clearly the petition fails to show legal subrogation, since it is not shown that The Mortbon Corporation ever acquired title to the judgment sought to be enforced by the payment of the debt, or for that matter, by the payment of any valid or valuable consideration. To entitle the petitioner to legal subrogation, it would have to show payment of the debt and that such payment was not made by it as a mere volunteer. Nor would the petitioner be entitled to conventional subrogation under the agreement or assignment attached as Exhibit "A," since such assignment or exhibit does not show payment, or that it was ever actually completed or consummated. The assignment attached as Exhibit "A," by reason of the restrictions and limitations imposed therein, can not be construed as an agreement that The Mortbon Corporation is subrogated to all the rights and remedies of The Mortgage-Bond Company, nor can such assignment be construed as showing either payment of the judgment, or a valuable consideration therefor. See McCollum v. Lark, 187 Ga. 292 (200 S.E. 276).
The petition does not contain any allegation that any valuable consideration was paid by The Mortbon Corporation to The Mortgage-Bond Company. The petitioner does allege that it is the owner of the judgment sought to be revived. This might be true and yet the petitioner not be entitled to subrogation if its ownership should rest upon a fraudulent purpose or scheme to hinder, delay or defraud creditors or if its title was otherwise fraudulent. Under such circumstances the petitioner would have no standing in a court of equity.
The allegations of the petition clearly show that The Mortgage-Bond Company of New York proceeded to take a judgment in its own name on a suit pending in its name at the time of the alleged assignment and transfer. It is also alleged that at the time the corporate charter of The Mortgage-Bond Company was dissolved, on June 4, 1945, there was pending in the Superior Court of Fulton County a petition for scire facias in the name of The Mortgage-Bond Company to revive the judgment. The petition states that the foreclosure proceeding and the petition for *Page 811 
revival of the judgment were both brought for the benefit of the petitioner. The pleaded facts not only fail to support the allegation that the foreclosure proceeding and the proceeding to revive the dormant judgment were for the benefit of the petitioner, but on the contrary, such actions in the name of The Mortgage-Bond Company clearly imply that they were for the benefit of The Mortgage-Bond Company. Under the rule that all reasonable inferences and deductions legitimately drawn from the allegations of the petition will be construed most strongly against the pleader, the clear inference would arise that the assignment attached as Exhibit "A" never became operative, and that The Mortbon Corporation never acquired any interest in the judgment which is now sought to be revived.
The allegations of the petition, as amended, do not make a case for either legal or conventional subrogation, and the court properly sustained the general demurrer thereto. It follows that the cross-actions of the defendants, based on the theory that the original sale of the property was void, are without merit, no assignment either in law or in equity being shown by The Mortgage-Bond Company to The Mortbon Corporation. The court properly sustained the demurrers to the cross-actions.
Judgment affirmed on the main bill in Case No. 16196, and thecross-bill in Case No. 16198, and judgment affirmed in Case No.16184. All the Justices concur.