A05A1079. RABUN & ASSOCIATES CONSTRUCTION, INC.
v. BERRY et al.
A05A1080. GUDAITIS v. BERRY et al.
(623 SE2d 691)

BERNES, Judge.

Appellant defendants Rabun & Associates Construction, Inc. ("Rabun") and John Gudaitis, Charles ("Chuck") Fiore, GFA Gudaitis Associates, Gudaitis Associates, Inc., and GFA, Inc. (referred to jointly as the "Gudaitis appellants") appeal from the denial of their respective motions for summary judgment and the grant of partial summary judgment to appellees Danielle Berry and Mark Squillante (referred to jointly as "appellees"). We affirm.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review

applies to an appeal from a motion for summary judgment, and we review the evidence, with all reasonable conclusions and inferences drawn therefrom, in the light most favorable to the nonmovant. *Federated Dept. Stores v. Superior Drywall &c.*, 264 Ga. App. 857 (592 SE2d 485) (2003).

So viewed, the record shows that in early 2000, appellees hired the Gudaitis appellants and Rabun to renovate their home. The Gudaitis appellants served as the general contractor for the project, while Rabun served as a subcontractor. On August 24, 2000, rainwater entered appellees' home through an opening in the roof causing structural and personal property damage. Plaintiffs allege the damage was caused by the construction workers' failure to secure tarps covering the opening.

When the incident occurred, appellees were insured under a Fireman's Fund Insurance Company ("Fireman's Fund") homeowner's policy covering the dwelling and personal property. Appellees submitted two "Sworn Statement in Proof of Loss" claim forms that requested $598,585.43 for the damaged dwelling and $600,767.46 for the damaged personal property. The proof of loss forms provided that

> In consideration of the payment made insured hereby subrogates the Company to all rights, title and interest in and to the *property* for which claim is being made to the extent of such payment.

(Emphasis supplied.)

A dispute arose between appellees and Fireman's Fund as to the value of the claim. However, in settlement of the claim, Fireman's Fund paid appellees $503,254.83 for the damage to the dwelling and $480,000 for the damage to the personal property and for additional living expenses. The Release and Settlement Agreement with Fireman's Fund, executed by appellees on March 27, 2002, provided that

> AS FURTHER CONSIDERATION for the Undersigned's Release and Settlement Agreement in conjunction with this dispute, Fireman's Fund waives any subrogation rights which it may have against any party responsible for causing or contributing to the damage to the Property which occurred on or about August 24, 2000.

After they settled the insurance claims with Fireman's Fund, appellees filed a complaint against appellants, seeking damages against them as the alleged tortfeasors.

1. The Gudaitis appellants contend the trial court erred in denying their motion for summary judgment based on the mutual

exculpation rule set forth in *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980):

> [W]here parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.

(Citations and punctuation omitted.)

The Gudaitis appellants argue that appellees waived their right to sue them for the damages arising in this case by virtue of a contractual clause which required appellees to maintain insurance coverage during the construction project. The contractual provision provides: "CLIENT/BUYER shall have fire, theft, and liability insurance coverage in effect for property throughout the entire project." Significantly, the contract does not require extended coverage for loss occasioned by rain or storm damage, the specific peril in this case.

The Gudaitis appellants argue that the absence of covering rain or storm damage language is simply a "linguistic shortcoming" and the parties' conduct in carrying out the contract manifests an intent to shift the risk of loss for physical damage to the property to an insurer.[1] We recognize that in construing a contract, "magic words are not required, and the goal of the court is to look for the intent of the parties." (Citation omitted.) *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492, 494 (1) (451 SE2d 509) (1994). "But, 'where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.' *MAG Mut. Ins. Co. v. Gatewood*[, 186 Ga. App. 169, 172-173 (1) (367 SE2d 63) (1988)]." *Fernandes v. Manugistics Atlanta, Inc.*, 261 Ga. App. 429, 433 (1) (582 SE2d 499) (2003). "Neither the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it." (Citation omitted.) Id. at 433 (1).

Thus, we cannot infer that the parties intended to shift the risk of loss to an insurer for a peril which is omitted from the parties' contract. The plain language of the mandatory insurance provision

---

[1] We note that appellees recovered from their insurer under a homeowner's policy that had been in effect *before* the Gudaitis contract was executed. Thus, contrary to the argument advanced by the Gudaitis appellants, the fact that appellees had coverage for the specific peril in this case is not probative evidence of the parties' conduct in carrying out the contract and does not evidence an intent to shift the risk of loss for all physical damage to the property to an insurer.

renders it ineffective to shift the risk of loss in this case. We agree with the trial court that there is no evidence that "the loss fell within the required 'fire, theft and liability' coverage."[2] See, e.g., Ga. Comp. R. & Regs. r. 120-2-19-.01 (Standard fire insurance policy only covers losses incurred by fire. Any other peril is excluded unless a written endorsement is added to the policy.).

*Tuxedo* and *Glazer*, upon which the Gudaitis appellants rely, are factually inapposite. In both cases, the fires that caused the losses were perils covered under the policies required to be maintained by the contract provisions. The trial court's denial of summary judgment on this issue was proper.

2. Both Rabun and the Gudaitis appellants contend that they were entitled to summary judgment on all claims up to the amount that appellees were paid by Fireman's Fund, appellees' insurer. According to Rabun, the subrogation language in the proof of loss forms executed by appellees effectuated an assignment which "extinguished any cause of action [a]ppellees had against Rabun to the extent of payment by Fireman's Fund." Similarly, the Gudaitis appellants allege that the subrogation language in the proof of loss forms divested appellees of their cause of action against the alleged tortfeasors.

We disagree. We do not find the language in the proof of loss forms effective to subrogate or assign appellees' rights, title and interest in any cause of action arising from the claims. The provision upon which the appellants rely provides that the "insured hereby subrogates the Company to all rights, title and interest in and to the *property* for which claim is being made to the extent of such payment." (Emphasis supplied.) The unambiguous language of the proof of loss forms grant Fireman's Fund subrogation to appellees' rights, title and interest in the *property* that was damaged, and not to the claim. See *Bowen v. Waters*, 170 Ga. App. 65, 66 (1) (316 SE2d 497) (1984) (insured transferred to insurer right, title and interest in and to automobile). "Where the terms and conditions of a policy are unambiguous, the court must declare the contract as made by the parties." (Citations and punctuation omitted.) *United States Fire Ins. Co. v. Capital Ford Truck Sales*, 257 Ga. 77, 79 (1) (355 SE2d 428) (1987).

The cases cited by Rabun and the Gudaitis appellants on this issue, including *U. S. Fidelity &c. Co. v. J. I. Case Co.*, 209 Ga. App. 61 (432 SE2d 654) (1993); *Bryant v. Atlanta Gas Light Co.*, 149 Ga. App. 126 (253 SE2d 807) (1979); *Harrell v. Carlton*, 141 Ga. App. 41 (232 SE2d 384) (1977); *Lindsey v. Samoluk*, 236 Ga. 171 (223 SE2d

---

[2] We recognize that if the loss had been occasioned by fire or theft in this case, our decision would be different, as the provision required insurance to cover those types of losses.

147) (1976); and *Parker Plumbing &c. Co. v. Kurtz*, 225 Ga. 31 (165 SE2d 729) (1969), all are distinguishable as they specifically refer to assignment or subrogation of the *claim* or the *right to recover* from a third party.

Even if we were to find that the proof of loss forms provided for contractual subrogation of the claims, Fireman's Fund expressly waived its right to subrogation in the Release and Settlement Agreement executed contemporaneously with the issuance of the settlement payment.[3] "It is a basic tenet of contract law . . . that the parties may by contract modify or otherwise alter their obligations. [Cit.]" *Wheels & Brakes v. Capital Ford Truck Sales*, 167 Ga. App. 532, 534 (4) (307 SE2d 13) (1983). Thus, when an insurer issues payment to the insured and contemporaneously agrees to waive subrogation of the claim, as it did in this case, the agreement supersedes and renders inoperative any provision of the insurance contract to the contrary, and the insured retains the cause of action against third parties. Id. at 534-535 (4). Hence, appellees in this case retained the cause of action against third parties. See also *Topa Ins. Co. v. Acree*, 209 Ga. App. 234, 236-237 (433 SE2d 312) (1993) ("Upon the settlement by the insurance company, '[t]here is a new, original, and independent engagement, founded upon the merger and extinguishment of the pre-existing debt or demand [which] operat[es] by way of novation and substitution.' Therefore, the basis for the underlying debt, i.e., the insurance contract, is no longer relevant to the inquiry.") (citation omitted).

It is relevant to note that the Release and Settlement Agreement contained a merger clause,[4] thereby extinguishing "all prior negotiations, understandings, and agreements on the same subject." *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2) (546 SE2d 781) (2001). Based upon the express language in the settlement agreement, subrogation under the proof of loss forms was waived and the settlement agreement superseded any provision of the insurance contract or proof of loss forms to the contrary, such that appellees retained their cause of action.

---

[3] Subrogation could not occur under the proof of loss forms until the settlement payment was made, as the right to subrogation must be supported by valuable consideration, i.e., payment. See *Telfair Stockton & Co. v. Trust Co. of Ga.*, 203 Ga. 802, 810 (2) (48 SE2d 532) (1948) (To be entitled to legal subrogation, the insurer must show payment of the debt. Likewise, to be entitled to conventional subrogation under the agreement, the insurer must show valid and valuable consideration or payment that was actually completed or consummated.).

[4] The merger clause provided: "ALL AGREEMENTS AND UNDERSTANDINGS between the parties hereby are embodied and expressed herein . . . and that this Release and Settlement Agreement contains the entire agreement between the Undersigned [appellees] and Fireman's Fund."

The executed Release and Settlement Agreement also waived any right Fireman's Fund may have had to equitable subrogation. Subrogation is for the benefit of the insurer, and allows the insurer to be indemnified upon its payment on the claim. Although the right of equitable subrogation may arise automatically upon payment under the policy, subrogation may be expressly waived by the insurer, as it was in this case, pursuant to agreement. See OCGA § 1-3-7 ("a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest"). See, e.g., *Bryan v. MBC Partners, L.P.*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000) (citing OCGA § 1-3-7 and holding, "[I]t is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears.").

Appellants' motions for summary judgment on this issue were properly denied.

3. Our decision that appellees were not divested of their cause of action in Division 2 also is linked inextricably to the application of the collateral source rule. "Under [the collateral source rule,] '[a] tortfeasor can not diminish the amount of his liability by pleading payments made to the plaintiff under the terms of a contract between the plaintiff and a third party who was not a joint tortfeasor.' " (Citations omitted.) *Ins. Co. of North America v. Fowler*, 148 Ga. App. 509, 511 (2) (251 SE2d 594) (1978), overruled on other grounds, *Seaboard Coast Line R. v. Mobil Chem. Co.*, 172 Ga. App. 543 (323 SE2d 849) (1984). "The payment [by the insurer is] the plaintiffs' entitlement under their own coverage for which they paid." *Powers v. Jones*, 185 Ga. App. 859, 861 (1) (366 SE2d 234) (1988).

The Fireman's Fund payment was made pursuant to a separate contractual obligation existing between Fireman's Fund and appellees under their policy. Fireman's Fund is not alleged to be appellants' insurer and the payment was not made on behalf of the appellants. Accordingly, appellants are not entitled to reduce their tort liability by the amount of Fireman's Fund's payment and appellees are authorized to maintain their cause of action for the full amount of the losses under the claim. The trial court did not err in granting appellees' motion for partial summary judgment.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 21, 2005.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, J. Kenneth Moorman, Howard J. Russell*, for Rabun & Associates Construction, Inc.

*Frederick A. Johnson,* for Gudaitis.

*King & Croft, F. Carlton King, Jones & Day, W. Rhett Tanner,* for appellees.