A05A1992. AUTO-OWNERS INSURANCE COMPANY v. PARKS.
(629 SE2d 118)

BERNES, Judge.
Auto-Owners Insurance Company was sued by its insured, Grant Stepp d/b/a Grant Stepp Equipment Company, in the underlying lawsuit to collect on an insurance claim for damage to a John Deere 690 ELC excavator owned by Stepp and leased to a third party, Robert Parks. Auto-Owners filed a motion for summary judgment in the main action, claiming that the loss was not covered under the policy. The motion was denied. Thereafter, Auto-Owners contended that the insurance policy provided a right of subrogation for recovery against the individual responsible for the damage and obtained leave of court to file its third-party complaint against the lessee, Parks. Parks filed a motion for summary judgment in the third-party action, claiming that Auto-Owners was not authorized to maintain the action in its own name since it had not paid the claim as a condition precedent to the contractual subrogation provision and since Parks was a third-party beneficiary or co-insured under the policy. The trial court granted Parks' motion as to the third-party claim. Auto-Owners appeals the decisions as to the respective summary judgment motions. We find no error and affirm.

---

[11] *Seagraves v. State*, 259 Ga. 36, 39 (376 SE2d 670) (1989) (citations omitted).

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a motion for summary judgment, and we review the evidence, with all reasonable conclusions and inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citation omitted.) *Rabun & Assoc. Constr. v. Berry*, 276 Ga. App. 485, 485-486 (623 SE2d 691) (2005).

So viewed, the evidence shows that Stepp was the owner of the John Deere 690 ELC excavator, and had obtained an insurance policy with Auto-Owners to cover this equipment on October 13, 2000. Naming Stepp as the insured, the policy included coverage for "Rented Equipment" and contained a "Rented Equipment Endorsement" stating, "We cover merchandise of the type described . . . *while such merchandise is in the possession of others under a rental or loan agreement with you* up to $100,000 for only one loss." (Emphasis supplied.) The endorsement further specified, "We cover: . . . [p]roperty you lease or rent to others."

On August 28, 2001, Stepp leased the excavator to Parks pursuant to a rental agreement. The rental agreement contained an insurance provision in paragraph 6 stating:

Lessee, at his expense, shall keep said equipment insured for the term of the Agreement and any renewals or extensions thereof, for the full insurable value thereof, against fire and theft with extended or combined additional coverage against such other risks in such amounts as Lessor may specify. Lessee shall deliver to Lessor the policies or evidence of insurance with a standard long form endorsement attached thereto, showing losses, if any, payable to Lessor, in form satisfactory to Lessor, together with receipts for the premiums thereunder.

The rental agreement further specified:

if insurance coverage is not furnished to Grant Stepp Equipment as stated on reverse side hereof in paragraph (6) on the date of delivery of the equipment, Grant Stepp Equipment will place necessary insurance on the machines and equipment described in the above identified transaction in an amount equal to the insurable replacement value of the equipment leased or rented and the lessee WILL BE CHARGED FOR THE SAME.

It is undisputed that Parks failed to obtain independent insurance coverage. Instead, the rental agreement reflects that Stepp charged Parks a $50 itemized fee for the cost of insurance.

On August 30, 2001, the leased excavator was operated by Parks' employee to dig a pond. While the excavator was sitting on the dirt bank, the bank gave way and the excavator slid into the pond. Contending that the damaged excavator was covered under the insured peril of a "landslide," Stepp filed a claim for the damaged excavator in the amount of $56,793.10 under the Auto-Owners policy. However, Auto-Owners failed and refused to pay the claim.

1. We first address Auto-Owners' claim that it was entitled to summary judgment in the main action because the excavator purportedly was not damaged as a result of a peril insured under the policy as a matter of law. Auto-Owners claims that the excavator was not damaged by natural earth movement, but rather earth movement caused by human forces, namely, the use of the excavator itself on the dirt bank. While the policy provides coverage for the peril of a "landslide," Auto-Owners claims that the only reasonable construction of "landslide" is that it refers to earth movement resulting from a naturally occurring event rather than an artificial event caused by human force or agency. We disagree.

"The construction of a contract is a [matter] of law for the court." OCGA § 13-2-1. "Under Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning. OCGA § 13-[2]-2 (2)." *Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 334 (1) (380 SE2d 686) (1989). The usual and common meaning of a word "may be supplied by common dictionaries." (Citation omitted.) *Lemieux v. Blue Cross & Blue Shield of Ga.*, 216 Ga. App. 230, 231 (453 SE2d 749) (1995). Here, the policy fails to define the term "landslide." However, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) states that a landslide is "the usually rapid downward movement of a mass of rock, earth, or artificial fill on a slope" and does not limit the term to downward movement resulting solely from natural causes. As such, the plain dictionary meaning of "landslide" does not support the restrictive gloss placed on that term by Auto-Owners.

Furthermore, "[i]n construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other." (Citation omitted.) *Southern Trust Ins. Co. v. Dr. T's Nature Products Co.*, 261 Ga. App. 806, 807 (1) (584 SE2d 34) (2003). In the present case, coverage of "landslides" arises in the context of a policy covering "agricultural implements, combines, and tractors and equipment which is attached to or forms a part of any of these" — which clearly includes heavy, earth-moving equipment like the excavator. Given

the nature of what was insured under the policy, the term "landslide" should not be interpreted to apply only to natural occurring events, when no such restriction is contained within the explicit language of the policy itself.

This is particularly true where, as here, in other clauses listing perils insured against, Auto-Owners placed specific restrictions on otherwise broad terms. For example, the policy insured against the peril of "[e]xplosion, *except that originating in a steam boiler or internal combustion engine*," and against the peril of "[f]lood, *meaning rising of navigable waters*." (Emphasis supplied.) As such, when Auto-Owners wanted to narrow the scope of a peril insured against, it knew how to do so. It follows that when Auto-Owners failed to add restrictive language delimiting the scope of what constitutes a "landslide," "[w]e must presume that its failure to do so was a matter of considered choice." (Citation and punctuation omitted.) *Inland Paperboard &c. v. Ga. Dept. of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005).

Finally, to the extent that there is any ambiguity in how to define "landslide," the ambiguity must be interpreted against Auto-Owners and in favor of Stepp because "[a]n insurance policy is construed liberally to provide coverage." (Citation omitted.) *Lemieux*, 216 Ga. App. at 231.

> If a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied. Pursuant to the rule of construction set forth at OCGA § 13-2-2 (5), the contract will be construed strictly against the insurer/drafter and in favor of the insured.

(Citation and punctuation omitted.) *Connell v. Guarantee Trust Life Ins. Co.*, 246 Ga. App. 467, 470 (1) (541 SE2d 403) (2000). See also *Claussen*, 259 Ga. at 334-335 (1); *Roland v. Ga. Farm &c. Ins. Co.*, 265 Ga. 776, 778 (1) (462 SE2d 623) (1995).

However, citing to *Cox v. State Farm Fire &c. Co.*, 217 Ga. App. 796 (459 SE2d 446) (1995); *Broome v. Allstate Ins. Co.*, 144 Ga. App. 318 (241 SE2d 34) (1977); and *Underwood v. U. S. Fidelity &c. Co.*, 118 Ga. App. 847 (165 SE2d 874) (1968), Auto-Owners argues that this Court's prior insurance cases interpret "landslide" as applying only to a naturally occurring event where human forces were not a factor. But, none of the cases cited by Auto-Owners focused specifically on how to define "landslide" or defined "landslide" in the abstract, but instead more generally addressed in whose favor (the insurer or insured) to interpret an "earth movement" policy *exclusion*

contained in the policies. Significantly, the exclusion was interpreted narrowly *against the insured and in favor of coverage* in all three cases. In contrast, the term "landslide" in the Auto-Owners policy appears in a *coverage* provision rather than as an item in an "earth movement" exclusion. Additionally, none of the three cases cited by Auto-Owners involved interpreting "landslide" within the context of an insurance agreement aimed at insuring heavy, earth-moving equipment like excavators. Thus, the cases cited by Auto-Owners are inapposite given the particular contractual language and circumstances of this case.

Auto-Owners also emphasizes that the paragraph of coverage at issue — paragraph 7 of "Perils We Insure Against" — insured against the peril of "[e]arthquake or landslide." Auto-Owners argues that under the interpretive principle of ejusdem generis, "landslide" should be construed to refer only to naturally occurring events because the term was specifically coupled with the term "earthquake," which clearly refers to a naturally occurring event rather than one caused by human agency. We cannot agree.

"The longstanding rule of construction known as ejusdem generis provides that a general term following specific terms is confined to the same kind or category of thing." (Citation and punctuation omitted.) *Turpen v. Rabun County Bd. of Commrs.*, 245 Ga. App. 190, 193-194 (2) (537 SE2d 435) (2000). However, the present case does not involve a specific term followed by a more general term; rather, "earthquake" and "landslide" operate at the same level of specificity. The principle of ejusdem generis thus has no application. See *Accident &c. Ins. Co. v. Cook*, 72 Ga. App. 241, 245 (33 SE2d 571) (1945). Moreover, the principle does not control when "the whole context [of the agreement] dictates a different conclusion." (Punctuation and footnote omitted.) *Dept. of Transp. v. Montgomery Tank Lines*, 276 Ga. 105, 107 (1) (575 SE2d 487) (2003). Here, other paragraphs of coverage in the policy linked together what clearly could only be naturally occurring events with events that could be caused naturally or by human forces. For example, paragraph 1 extends coverage to physical damage or loss caused by both "fire and lightning." As such, the coupling of "earthquake" and "landslide" in the same paragraph of coverage does not by itself evidence an intent by the parties to narrow the meaning of "landslide" solely to naturally occurring events.

For these reasons, we conclude that, as a matter of law, the insurance policy drafted by Auto-Owners did not restrict its coverage to landslides caused solely by naturally occurring events. Our review of the record leads us to further conclude that, when the evidence is interpreted in the light most favorable to the nonmovant, there is a genuine issue of material fact over whether the excavator was

damaged because it "simply sank in the mud" as Auto-Owners contends or was damaged as the result of "the usually rapid downward movement of a mass of rock, earth, or artificial fill on a slope" so as to fall within the common definition of a "landslide." Accordingly, we conclude that the trial court properly denied summary judgment to Auto-Owners in the main action.

2. Auto-Owners also argues that the trial court erred in granting summary judgment to Parks in the third-party action. Auto-Owners focuses on the provision in the insurance policy which states: "After making payment under this policy, we will have the right to recover to the extent of our payment from anyone held responsible. You agree to do whatever is required to transfer this right to us." Auto-Owners asserts that this provision assigned to it a right of subrogation and entitled it to bring the third-party action in its own name against Parks, the person allegedly responsible for the excavator's damage. We disagree.

As clearly expressed in the provision relied upon by Auto-Owners, to the extent that Auto-Owners is afforded a right of subrogation under the insurance policy, it does not arise until "after making payment under the policy." But, Auto-Owners did not make payment under the policy, and instead denied Stepp's claim. As such, Auto-Owners failed to satisfy the condition precedent for asserting any subrogation right it may have had under the provision. See *Rabun & Assoc. Constr.*, 276 Ga. App. at 489 (2), n. 3 (citing *Telfair Stockton & Co. v. Trust Co. of Ga.*, 203 Ga. 802, 810 (2) (48 SE2d 532) (1948) and stating that "to be entitled to conventional subrogation under the agreement, the insurer must show valid and valuable consideration or payment that was actually completed or consummated").

Moreover, the policy provision at issue gives Auto-Owners the right of recovery, but fails to expressly give Auto-Owners a right of action. Indeed, there is no evidence that the right of action had been transferred to Auto-Owners by its insured when the third-party action was commenced under OCGA § 9-11-14 (a). Consequently, any action against Parks had to be brought in the name of the insured, and Auto-Owners' third-party action improperly brought in its own name was subject to dismissal. See *Allstate Ins. Co. v. Welch*, 259 Ga. App. 71, 72 (1) (576 SE2d 57) (2003); *Liberty Mut. Ins. Co. v. Clark*, 165 Ga. App. 31, 32 (2) (299 SE2d 76) (1983).

For the above reasons, Auto-Owners was not legally authorized to maintain the subrogation claim against Parks in the third-party action. Therefore, the trial court did not err by granting Parks' motion for summary judgment.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2006.

*John T. Croley, Jr.,* for appellant.
*Gilbert, Harrell, Sumerford & Martin, Mark D. Johnson, James L. Roberts IV,* for appellee.